WARREN CHEMICAL AND MANUFACTURING COMPANY, Appellant, *v.* GILES H. HOLBROOK, Respondent.

In an action to recover for a quantity of roofing materials, the answer set up as a counter-claim that defendant entered into an oral contract with plaintiff to solicit contracts for putting on plaintiff's patent roofing within certain territory, defendant to have the exclusive right to do the work, he paying plaintiff an agreed price for the material; that aided and assisted by defendant, who contributed both time and money, plaintiff procured a contract to put the roofing on certain buildings, it being expressly agreed that defendant was to do the work; that he proceeded to make the necessary arrangements to fulfill the contract, including the purchase of certain materials plaintiff did not furnish; that he was only permitted to do a portion of the work, and plaintiff did the balance and retained the money paid therefor. Evidence was

given on the part of defendant sustaining the allegations of the answer, with the proviso that the agreement was to last during the pleasure of plaintiff. *Held,* that the counter-claim was properly allowed; that the contract was not within the Statute of Frauds; that the establishment of the counter-claim did not depend upon whether, under the original agreement, defendant was exclusively entitled to do the work, as his agency was adopted in, and extended to, the transaction in question; that the right reserved by plaintiff to terminate the agreement at its pleasure was subject to the requirements of good faith, and could not be exercised after the contract for the roofing had been obtained, as to that contract, so as to deprive the agent of his profits.

The contract for the work in question was at so much a square foot. Defendant was permitted to prove what it would have cost him to do the work. *Held,* no error; that the damages recoverable by defendant were the loss of profits so far as provable.

Where the compensation of an agent is dependent upon the success of his effort in procuring a contract for his principal, and his subsequent performance of the work, the principal will not be permitted when the contract is obtained and compensation assured, to terminate the agency for the sole purpose of securing to himself the agent's profits.

A contract for the sale of articles thereafter to be manufactured and delivered does not come within the Statute of Frauds.

So, also, that statute does not include an agreement which is not likely or is not expected to be performed within a year, if when fairly and reasonably interpreted it admits of a valid execution within that time.

Where part of an answer given to a proper question is not responsive, an objection and exception thereto does not present the question for review as to whether the testimony is competent; it can only be presented by motion to strike out.

(Argued January 31, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon order made May 13, 1887, which affirmed a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts so far as material are stated in the opinion.

*Wm. W. Niles* for appellant. The defendant had not paid for the goods he had already received, and, therefore, he first broke the agreement, even if there was one, and plaintiff was justified in refusing to deliver more. (*Mallory* v. *Gillett,* 21 N. Y. 412; 3 R. S. [7th ed.] 2327; *Stone* v. *Browning,* 51 N. Y. 211; 68 id. 598.) Fraud or bad faith must be clearly

.proved, and cannot be presumed from facts just as consisten
with innocence as with guilt. (*Shultz* v. *Hoagland*, 85 N. Y.
464.) On the question of damages we submit that even if
appellant had performed this contract without any sufficient
reason, the speculative profits or estimated profits of the job
are not the true measure of damages where no demand for
permission to do the work, and no tender or offer to do it, is
proved, and where it does not appear that the party was not
occupied on other equally profitable contracts during the same
period. (*D., L. & W. R. R. Co.* v. *Bowns*, 58 N. Y. 580;
*Higgins* v. *D., L. & W. R. R. Co.*, 60 id. 557; *Born* v.
*Schrenkeisen*, 110 id. 55; 2 Parsons on Contracts, 675, 681.)

*William Talcott* for respondent. The contract did not
come within the Statute of Frauds. (*Crookshank* v. *Burrell*,
18 Johns. 58; *Downs* v. *Ross*, 23 Wend. 270; *Ferren* v.
*O'Hara*, 62 Barb. 517; *Smith* v. *N. Y. C. R. R. Co.*, 4
Keyes, 180; *Parsons* v. *Loucks*, 48 N. Y. 17; *Kent* v. *Kent*,
62 id 560; *Van Woert* v. *A. & S. R. R. Co.*, 67 id. 538;
*LeGrand* v. *M. M. Assn.*, 80 id. 638; *Doyle* v. *Dixon*, 97
Mass. 208; *Heath* v. *Heath*, 31 Wis. 223; *Knowlton* v.
*Bluett*, L. R. [9 Exch.] 1; *Gault* v. *Brown*, 48 N. H. 183;
*Green* v. *Harris*, 9 R. I. 401; *Roberts* v. *R. Co.*, 7 Metc.
46; *Hodges* v. *R. M. Co.*, 9 R. I. 482; *Smart* v. *Smart*, 97
id. 559; *McKnight* v. *Dunlop*, 5 id. 537; *Thompson* v.
*Mink*, 2 Keyes, 86.) The evidence touching the transactions
between plaintiff and defendant during all the dealings
between them, from the commencement of their business
relations up to the time of the rupture between them, was
properly admitted in order that the jury might judge as to
the relationship existing between the parties at the time the
dispute in this case arose. (*Patten* v. *Pancoast*, 109 N. Y.
625.) Whether or not the defendant was himself directly or
definitively appointed the agent for northern New Jersey for
the plaintiff, he was distinctly recognized by the plaintiff
through its officers as such agent. (*Olcott* v. *T. R. R. Co.*,
27 N. Y. 546; *Woodbridge* v. *Proprietors*, 6 Vt. 204; *Zabris-*

*kie* v. *C., C. & C. R. R. Co.*, 23 How. [U. S.] 381, 400 ;:
*P., W. & B. R. R. Co.* v. *Cowell*, 28 Penn. St. 329; *Bargate*
v. *Shortridge*, 5 H. L. Cas. 297, 318; *Totterdell* v. *F. B. &·
T. Co.*, L. R. [1 C. P.] 674; *Evans* v. *Smallcome*, L. R.
[3 Eng. & Ir. App.] 249.) Although the defendant was
agent of the plaintiff at the plaintiff's will, and the contract·
between them was determinable at any time at the option
of the plaintiff, yet such determination of the contract could
not be made as to any work procured or begun prior to notice.
of such determination unless for cause arising from the work
immediately in hand. (*New England Iron Co.* v. *Gilbert E..
R. R. Co.*, 91 N. Y. 153; *Wakeman* v. *Wheeler & Wilson
Mfg. Co.*, 101 N. Y. 205; *Parmelee* v. *Adolph*, 28 Ohio St..
10; *Carney* v. *Newberry*, 24 Ill. 203; *Lawrence* v. *Dale*,.
3 Johns. Ch. 23, 37; *McNeven* v. *Livingston*, 17 Johns. 437;
*Masson* v. *Bovet*, 1 Denio, 69; *Bruce* v. *Davenport*, 3 Keyes,
472.) The defendant was entitled to do the work on the·
West Shore roofs and to make a profit thereon. (*Wakeman*
v. *W. & W. M. Co.*, 101 N. Y. 205; *Sibbald* v. *B. I. Co.*, 83
id. 378, 384.) The proper measure of damages was the amount
of profit which the defendant would have made in putting·
on the roofs at the price which he named to the West Shore.
Railroad Company, and the jury did right in awarding that
profit as the defendant's damages on the counter-claim..
(*Wakeman* v. *W. & W. M. Co.*, 101 N. Y. 205; *Boyd* v.
*Meighan*, 19 Vroom, 404; *Wolcott* v. *Mount*, 7 id. 262;
*Hadley* v. *Baxendale*, 9 Exch. 341; *Bridge* v. *Wain*, 1 Starkie,
504; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Fox* v. *Harding*,
7 Cush. 516; *Dennis* v. *Maxfield;* 10 Allen, 138; *Simpson* v.
*L. & N. W. R. Co.*, L. R. [1 Q. B. Div.] 274; *Fleck* v. *Weather-
ton*, 20 Wis. 392; *White* v. *Miller*, 71 N. Y. 118, 132;
*Mitchell* v. *Read*, 84 id. 556; *Danolds* v. *State*, 89 id. 36;.
1 Sutherland on Damages, 113; *Dart* v. *Laimbeer*, 107 N. Y.
664, 669.)

Parker, J. This action was brought to recover for a quan-
tity of roofing material. The answer admitted the sale,.

delivery and balance unpaid to be as set forth in the complaint, and set up by way of counter-claim, in substance, that defendant was the agent of the plaintiff for the district of northern New Jersey for "Warren's Anchor Brand National Ashphalt Roofing." That by the terms of the agency he solicited contracts for putting on the plaintiff's patent roofing. The contracts to be made with the plaintiff, but the defendant to do the work and pay the plaintiff an agreed price for the material. That within his territory, the plaintiff, aided and assisted by the defendant, procured a contract to put the roofing on some buildings about to be erected, or in process of erection by the West Shore and Buffalo Railway Company. That it was expressly stated to him by the officers and agents of the plaintiff that he was to do the work. He then proceeded to make the necessary arrangements in order to fulfill the contract, including the purchase of gravel and other materials which the plaintiff did not furnish. That he was only permitted to put on the roof of the round-house, the plaintiff refusing to furnish the materials or suffer him to do the other work. That instead, the plaintiff did the work and retained the moneys paid therefor. That thereby he sustained damages to the amount of $6,756, and demanded judgment therefor, less the amount of plaintiff's claim. He also demanded a further sum, by way of counter-claim, for work done upon another building, but as the verdict of the jury was in favor of the plaintiff, as to it, no further reference thereto is required. What may be said hereafter will refer solely to the first counter-claim.

At the close of the testimony the plaintiff moved the court for a dismissal of the counter-claim and for judgment. Several grounds were assigned, but they may properly be grouped into three propositions: First, there is not sufficient evidence of a contract of agency to authorize a recovery; second, if there was a contract, then the plaintiff having reserved the right to terminate it, the exercise of such right relieved it from all liability, and third, in any event the alleged contract was void under the Statute of Frauds.

The evidence on the part of the plaintiff tended to show,

that, prior to February, 1872, the Messrs. Morton were acting as agents for the plaintiff in a territory known as northern New Jersey. That, at about that time, the defendant bought out one of the Mortons, and the new firm was recognized by the plaintiff as its agents. Subsequently the firm was dissolved and the defendant alone continued the business. The plaintiff was notified of the change and accepted the defendant as its agent. That it was agreed that during the pleasure of the plaintiff, the defendant should have the exclusive right to apply the roofing material within the territory of northern New Jersey.

Under this arrangement the defendant alone, and also in conjunction with the officers and employees of the plaintiff, solicited contracts for the putting on of the roofing. When a piece of work was obtained, the contract was made by the plaintiff. It shipped the patent roofing to the defendant who did the work and furnished such other materials as were required to perform the contract. The defendant paying the plaintiff an agreed price for the patent roofing and retaining the balance of the contract price for services rendered in attempting to secure contracts and putting on the roofing.

In the fall of 1881, some of the agents or servants of the plaintiff called defendant's attention to the amount of roofing in contemplation by the New York, West Shore and Buffalo Railway Company, and requested him to join in an attempt to to secure the job. This he did, and to that end contributed both time and money. The president of the plaintiff requested that the price be named by the defendant and asserted that if the contract should be obtained it would be in the defendant's territory and would be his. job. It was obtained, and subsequently the defendant was instructed to prepare to perform the work. He entered upon its performance, but was only permitted to roof the round-house. Whether, by the terms of the agency, the defendant acquired the exclusive right to use the plaintiff's roofing materials within the territory in which the West Shore buildings are situate was sharply litigated upon the trial and has been pressed upon our attention here.

Respecting that issue we agree with the learned trial court that the establishment of defendant's counter-claim does not depend upon whether under the original agreement of agency the defendant was· exclusively entitled to put on the roofing in this territory.   For the evidence at least permitted a finding that not only had he been an agent of the plaintiff for years, but that such agency was recognized and adopted in and extended to this particular transaction.

As to the existence of the contract of agency, therefore, a question was presented for the jury.

It was also urged, in support of the motion for judgment, that by the terms of the agency the plaintiff was at liberty to terminate it at any time.   That, therefore, the plaintiff did but exercise a right reserved, of which the defendant cannot be heard to complain.   We cannot assent to that proposition in the breadth contended for it.   The right to terminate the agency had only one limitation it is true, but it had one.   The time of its exercise was subject to the ordinary requirements of good faith.   When the compensation of an agent is dependent upon the success of his efforts in procuring ·a contract for his principal, and his subsequent performance of the work, the principal will not be permitted to stimulate his efforts with the promise of reward, and then when the contract is obtained and the compensation assured after construction, terminate the agency for the sole purpose of securing to himself the agent's profits.   At any time before there was a reasonable assurance that the contract would be obtained, the plaintiff might have terminated the agency.

But after it was obtained, and his right to such profits as might accrue became assured, it could not be put at an end in bad faith and as a mere device to deprive the agent of the fruit of his labors.

The defendant's evidence tended to show that the plaintiff's refusal to permit him to complete the work after he had, by his. direction, purchased materials and entered upon its performance was done in bad faith, and for the sole purpose of depriving him of the large profits likely to accrue.   On the

other hand, the trend of plaintiff's evidence was in the direction of good faith on its part in terminating the agency. Thus was presented a question of fact for the consideration of the jury, and the trial court rightly so held. Assuming that the contract was one for the sale and delivery of patent roofing materials, to be thereafter manufactured and delivered, the most favorable view possible for the plaintiff, it is not within the Statute of Frauds. True there was no note or memorandum of the contract. But, in this state, we regard the established rule to be that a contract for the sale of articles thereafter to be manufactured and delivered does not come within the condemnation of that provision. (*Parsons* v. *Loucks*, 48 N. Y. 17.)

While it is true, as insisted by the appellant, that it was not provided by the terms of the contract that it should be performed within one year from its making, neither was it provided that it should not be performed within such period. Nothing whatever was said as to time. Now the statute does not include an agreement which is simply not likely to be performed, nor yet one which is simply not expected to be performed within the space of a year. Neither does it include an agreement which, fairly and reasonably interpreted, admits of a valid execution within that time, although it may not be probable that it will be. (*Kent* v. *Kent*, 62 N. Y. 560.)

The statute, as interpreted by the courts, therefore, does not include this agreement, for there is nothing in its terms inconsistent with complete performance within a year.

It follows that the motion for judgment was properly denied.

The first exception to which our attention is called does not present a question for review. The objectionable evidence constituted the unresponsive portion of an answer to a proper question answered without objection. The plaintiff contented himself with an objection and exception, after answer given, instead of a motion to strike out.

The rejection of the letters marked "G" and "H" for identification appears to have been based, in part, upon the

objection that they had no reference to the contract in dispute. As we are prevented from examining them by reason of their exclusion from the printed record, it must be assumed that the trial court rightly determined that they did not relate to the pending controversy.

The evidence offered for the purpose of showing the amount of damages sustained was properly received. It was proved that by the contract with the railroad company plaintiff was to receive six and one-half cents per square foot. Defendant was permitted to testify that it would have cost him four and one-half cents per square foot. The element of damage recoverable in this case consisted of gains prevented. The proper measure, therefore, was the loss of profits so far as provable. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205.)

An examination of each of the many exceptions taken fails to disclose any error justifying a reversal.

Judgment should be affirmed.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.