EVERITT v. NEW YORK ENGRAVING & PRINTING CO.

(Common Pleas of New York City and County, Additional General Term. December 2, 1895.)

1. STATUTE OF FRAUDS—CONTRACT NOT TO BE PERFORMED IN A YEAR.
   A verbal contract for commissions each month on all the work which plaintiff will procure for defendant from a certain establishment is not within the statute of frauds, as not to be performed in a year.

2. EVIDENCE—CONCLUSION OF WITNESS.
   In an action to recover commissions for work procured for defendant, the question whether any orders were sent by reason of any influence of plaintiff calls for a conclusion.

Appeal from Second district court.

Action by George W. Everitt against the New York Engraving & Printing Company to recover commissions alleged to be due for securing orders for work for defendant. A judgment in favor of plaintiff was rendered by the justice without a jury, and defendant appeals. Affirmed.

Argued before DALY, C. J., and GIEGERICH, J.

Wilson & Bennett, for appellant.

William Hildreth Field & Deshon (Charles A. Deshon, of counsel), for respondent.

GIEGERICH, J.  This action was brought to recover the sum of $157.21, claimed by the plaintiff as commissions for securing orders for work for the defendant. The plaintiff's contention is that he was to receive 10 per cent. monthly on all the work that came to the defendant out of Harper Bros.' establishment. Defendant claims that he was to receive the commission only so long as he actively influenced the awarding of the work to it. The undisputed facts are that plaintiff had been employed by Harper Bros. in their engraving department for nine years, and knew their requirements, which differed from those of some other establishments. Upon leaving their employment, he was engaged by the defendant, which had long been attempting to get work from the Harpers, but up to that time had succeeded in getting only one or two hundred dollars worth per month of coarse line engraving work; its reputation for half-tone work, as alleged, being bad. The plaintiff agreed with it to undertake to secure more orders from the Harpers, and for a considerable period spent most of his time either in the one establishment or in the other. He induced those of Harpers' employés who had the placing of orders to give the defendant work on trial, and then followed the progress of that work through defendant's establishment, making suggestions, particularly with a view to adapting the plates to Harpers' needs; and then again, in the latter's establishment, "watched how the plates went through, how the impressions looked," etc. The quality of the work steadily and rapidly improved after the plaintiff's employment, so that from being unsatisfactory it became excellent. The quantity of work secured also gradually increased, until in the month of March, 1895,

the month sued for, it amounted to about $1,600 worth, the plaintiff's commissions increasing meanwhile from a few dollars per month for the first months to nearly $160, the amount now sued for. The defendant informed plaintiff in March, 1895, that the Harpers would not give it any more orders if it paid any commissions. It is significant that the price paid was then decreased from 30 to 27 cents per square inch, the exact amount of plaintiff's former commissions. The facts have been recited at such length because they serve to throw light upon the construction of the language conceded to have been used in the agreement of the parties. The defendant's secretary, Mr. Cooper, testified, "I told him I would give him 10 per cent. on all Harpers' work." His understanding of this seemed to be that this commission was in consideration of the plaintiff's peculiar influence, something in the nature of favor, with Harpers' people. The plaintiff's understanding seemed, on the other hand, to be that he was to do something of a more substantial character, namely, to adapt the work done to Harpers' needs. To be sure, he had influence in the sense of having, as an old employé, access to those of Harpers' people who controlled the placing of orders, and their confidence in a measure and to the extent of being able to secure a trial; but ultimate and permanent success depended upon his being able to bring it about that the defendant could turn out plates acceptable to the Harpers. The plaintiff also swore that Mr. Cooper told him that when once the work was well started "he could go to California, if he pleased, and would receive his check regularly," and I do not find that this testimony was contradicted. The practical construction that the parties placed upon this agreement, by including the value of the kind of work the defendant had been doing for the Harpers before the plaintiff entered upon this contract in the sum upon which he was paid commissions, has some bearing upon the question whether plaintiff was to be paid upon any orders other than those directly secured by his influence with Harpers' people.

The defendant's claim that the contract is void under the statute of frauds, because not to be performed within a year, is not good. The contract was for an indefinite period, which would be terminated at any time by the failure of Harpers to award further orders to the defendant. "If the agreement may, consistently with its terms, be entirely performed within the year, although it may not be probable or expected that it will be performed within that time, it is not within the condemnation of the statute." Kent v. Kent, 62 N. Y. 560, 564. See, also, Manufacturing Co. v. Holbrook, 118 N. Y. 586, 593, 23 N. E. 908.

Neither do I think that there was error in excluding the questions asked Mr. Smithwick, the man who had final authority in placing contracts for the Harpers, whether any orders were sent through him by reason of any influence of the plaintiff. The objection was that a conclusion was called for. The question was then asked whether plaintiff had anything to do with witness' sending orders to the defendant. I think the objection was good, because the ques-

tion was not limited to the point of any direct, personal influence by the plaintiff upon the witness.    Only to that extent would his answer have been testimony to a fact.

The judgment should therefore be affirmed, with costs.