MARY M. WARD, Respondent, *v.* PRICE W. HASBROUCK, Appellant, Impleaded with Another.

1. STATUTE OF FRAUDS — COLLATERAL AGREEMENT — NOTE OR MEMORANDUM. The note or memorandum of a collateral agreement to pay the rent of premises leased to another, contained in the correspondence between the agent of the owner thereof and the lessee and guarantor, is insufficient to sustain an action by the owner where, without the aid of parol evidence, such owner for whose benefit the promise is made is in no way connected with the contract, since such note or memorandum must contain in itself all the necessary terms of the contract.

2 PLEADING — GUARANTY — CONSIDERATION OF, AS ORIGINAL UNDERTAKING. A complaint in an action for rent, which alleges that one of two defendants for a sufficient consideration and for his own benefit entered into an agreement to guarantee the payment, and undertook to pay the rent of the premises under a lease thereof to the other, including any period of continuation effected under the terms of the agreement upon the exercising by his co-defendant of the option therein provided for, and that such option was exercised by the latter at the instance and request of the former, who, for a valuable consideration and for his own benefit, undertook and agreed to guarantee the payment of the rent for such continuation of the term, and promised and agreed to pay such rent, is sufficient to permit the consideration of such undertaking upon the theory that it is original in its character.

3. GUARANTY OF RENT — COLLATERAL OR ORIGINAL UNDERTAKING. An undertaking to guarantee the payment of and to pay rent by one jointly interested with another in business on premises rented by the latter for the carrying on of such business, made at the time of and as a part of the general agreement between the parties for the renting of the premises, is an original undertaking and not within the Statute of Frauds as a promise to answer for the debt, default or miscarriage of another.

4. LEASE — OPTION FOR RENEWAL. An agreement for the leasing of premises for four months with an option for an extension not exceeding three years is not within the Statute of Frauds, since the existence of such option does not render the agreement a lease for a longer period than four months, as it might not be exercised and it is possible for the lease to terminate at the end of the definite period agreed upon, and the statute does not include an agreement, even if it is not likely or is not expected to be performed within a year, if, when fairly and reasonably interpreted, it admits of a valid execution within that time.

5. LEASE — BEGINNING IN THE FUTURE. A lease for one year to take effect in the future need not be in writing.

6. APPEAL — CORRECT DECISION — WRONG REASON. A correct
decision will not be reversed on appeal because founded upon a wrong
reason where the ground of the decision cannot be seen to have misled a
party to his injury.

*Ward* v. *Hasbrouck*, 52 App. Div. 627, affirmed.

(Argued November 25, 1901; decided January 14, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered June
16, 1900, affirming a judgment in favor of plaintiff entered
upon a verdict directed by the court and an order denying a
motion for a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*John A. Straley* for appellant. The two letters are not
connected by reference and do not satisfy the requirements
of the Statute of Frauds to hold this defendant liable. (*Mentz*
v. *Newwitter*, 122 N. Y. 491; De Colyar on Guar., 66;
*Barney* v. *Forbes*, 118 N. Y. 580; *Belknap* v. *Bender*, 75
N. Y. 446; *Newbery* v. *Wall*, 65 N. Y. 484; *Stone* v. *Brown-
ing*, 68 N. Y. 598; *Bramer* v. *Gilbert*, 27 Misc. Rep. 421;
*Ackley* v. *Parmenter*, 98 N. Y. 425; 3 Pars. on Cont. 13,
note 5; Smith on Cont. 134, 135; Brown on Stat. of Frauds,
346, 349, 371, 375; *Drake* v. *Seaman*, 97 N. Y. 230; *Cassel*
v. *Beardsley*, 10 Hun, 343; Reed on Stat. of Frauds, 423,
426; *E. Nat. Bank* v. *Kaufman*, 93 N. Y. 273.) Defendant
Hasbrouck is entitled to a strict construction of the letters,
and they cannot be construed to cover the new lease, which
certainly was not under the option. (*Brooks* v. *Baker*, 9
Daly, 4; *Wood* v. *Dougherty*, 27 N. E. Rep. 676; *Knowles*
v. *Cuddeback*, 18 Hun, 590; *Barry* v. *Ransom*, 12 N. Y.
466; *Blossom* v. *Griffin*, 13 N. Y. 569; *Archer* v. *Douglas*
5 Den. 509.) The part performance by defendant Hasbrouck
of his oral contract of guaranty, if any, did not validate the
contract itself so as to save it from the force of the Statute of
Frauds. (*Wahl* v. *Barnham*, 116 N. Y. 87; *Billington* v.
*Cahill*, 51 Hun, 132.) Assuming that a guaranty of the pay-

ment of the rent was entered into by defendant Hasbrouck, he was released from liability thereunder by the direct acts of this plaintiff in refusing to carry out the terms thereof. (*Paine* v. *Jones*, 76 N. Y. 278; 9 Am. & Eng. Ency. of Law, 80; 24 Am. & Eng. Ency. of Law, 749; De Colyar on Guar. 32, 438; *Barhydt* v. *Ellis*, 45 N. Y. 107; *Walls* v. *Shuttleworth*, 7 H. & M. 355; *Grant* v. *Smith*, 46 N. Y. 93; *Bangs* v. *Strong*, 7 Hill, 250; *Dunham* v. *Bower*, 77 N. Y. 76; *Chatfield* v. *Simmons*, 92 N. Y. 209.)

*Henry M. Ward* for respondent. Upon the pleadings and evidence the defendant was not entitled to the dismissal of the complaint, and, therefore, cannot succeed on this appeal. (Baylies on N. T. & App. [2d ed.] 388; *Sweetland* v. *Buell*, 164 N. Y. 548; *Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84; *Adams* v. *R. L. Co.*, 159 N. Y. 176; *Smith* v. *Weston*, 159 N. Y. 194.) The pleadings and evidence establish the liability of Hasbrouck on the theory of an original promise to pay the rent as distinguished from a collateral contract to answer for the debt of Webb. (*Raabe* v. *Squier*, 148 N. Y. 81; *Clark* v. *Howard*, 150 N. Y. 232; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *Doland* v. *Richardson*, 4 Den. 95; *Scott* v. *Piltrington*, 15 Abb. Pr. 289; *Gillispie* v. *Torrance*, 25 N. Y. 306; Baylies on N. T. & App. 339.) If not liable on an original promise, then Hasbrouck was liable on a contract of guaranty, proved by competent evidence, which meets the requirements of the Statute of Frauds. (*Merle* v. *Wells*, 2 Camp. 413; *Belloni* v. *Freeborn*, 63 N. Y. 386; *McShane Co.* v. *Padian*, 142 N. Y. 211; *White* v. *Hoyt*, 73 N. Y. 505; *Smith* v. *Molleson*, 148 N. Y. 241; *White's Bank* v. *Myles*, 73 N. Y. 335; *Peabody* v. *Boutwell*, 69 Hun, 363; *Kuhn* v. *Brown*, 1 Hun, 244; *Williams* v. *Bacon*, 2 Gray, 391; *Wilkinson* v. *Evans*, L. R. [1 C. P.] 407; *Gale* v. *Nixon*, 6 Cow. 448; *Elliot* v. *Dean*, Cababe & Ellis, 283.) Hasbrouck's letter of June 3, 1893, was properly received in evidence as an admission against interest. (*Reed* v. *McCord*, 160 N. Y. 341.)

BARTLETT, J. The plaintiff, Mary M. Ward, seeks to recover, as landlord, of Price W. Hasbrouck and Charles Henry Webb the rent of certain offices at 165–167 Broadway, in the city of New York.

This appeal is from the judgment rendered on a second trial; on the first trial the complaint was dismissed. The judgment entered at the first trial was reversed by the Appellate Division on the ground that certain letters disclosing the contract relations of the parties were erroneously excluded when offered in evidence by the plaintiff.

The negotiations between the parties took the form of a contract, whereby the plaintiff was to lease to the defendant Webb the premises in question, and a promise by the defendant Hasbrouck to pay the rent. Referring to this promise, the Appellate Division, in reversing the first judgment, said : " No question is made upon the nature of the promise of Hasbrouck, whether collateral or original, nor do we determine anything on that point because it is not material to this appeal."

The Appellate Division in affirming the judgment in plaintiff's favor on the second appeal, after commenting upon the appearance in the present record of the documentary evidence improperly rejected on the first trial, said : " No new question is raised on this appeal, but we are asked to define Hasbrouck's relation to the transaction, as on the former appeal we said that no question was made upon the nature of the promise of Hasbrouck, whether collateral or original. As the plaintiff has declared upon the promise as a collateral one, has tried the case upon that theory, and upon the argument before us has conceded that it was collateral, for all the purposes of this decision we so regard it."

Considering the case in this aspect, the Appellate Division held that there was established a valid collateral contract in writing under the Statute of Frauds by defendant Hasbrouck upon which the plaintiff could recover. The Statute of Frauds was pleaded to the effect that it was a contract not to be performed within one year from the making thereof ; also,

that it was a promise to answer for the debt, default or miscarriage of another.

The record does not warrant the assumption that plaintiff proceeded entirely upon the theory of the contract being collateral. On the contrary, parol evidence was admitted which tended to establish the precise relations of the parties. We will examine the complaint later to ascertain if it be the fact that plaintiff declared upon a collateral contract. The learned counsel for the respondent has presented this case upon both theories, and we shall so consider it.

If the contract with the defendant Hasbrouck is to be regarded as a collateral undertaking and within the Statute of Frauds, all its necessary terms must be contained in the correspondence of the parties read in evidence without referring to the parol evidence introduced by the plaintiff.

The statute provides that every special promise to answer for the debt, default or miscarriage of another person shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith. (2 Birdseye's R. S. [2d ed.] pp. 1342, 1343, § 2.)

Section eight of this statute provides that "every instrument required by any of the provisions of this title to be subscribed by any party may be subscribed by the lawful agent of such party."

This court held in *Mentz* v. *Newwitter* (122 N. Y. 491) that a note or memorandum sufficient to take a contract of sale out of the operation of the Statute of Frauds must state the whole contract with reasonable certainty so that the substance thereof may be made to appear from the record itself without recourse to parol evidence. The court said : " Such essentials must appear without the aid of parol proof, either from the memorandum itself or from a reference therein to some other writing or thing, and such essentials to make a complete agreement must consist of the subject-matter of the sale, the terms and the names, or a description of the parties." (See Benjamin on Sales [Bennett's ed.], §§ 234 – 238 ; *Champion* v. *Plummer*, 1 Bos. & P. [N. R.] 252 ; *Williams*

v. *Lake*, 2 E. & E. 349 ; *Williams* v. *Byrnes*, 9 Jur. [N. S.] 363; *Potter* v. *Duffield*, 9 English Reports, 664; *Bailey* v. *Ogden*, 3 Johns. 399; *Clason* v. *Bailey*, 14 Johns. 484; *First Baptist Church of Ithaca* v. *Bigelow*, 16 Wend. 28 ; *Calkins* v. *Falk*, 1 Abb. Ct. App. Dec. 291.)

We are of opinion that the correspondence between these parties, which is the documentary evidence referred to, is insufficient to sustain the plaintiff's cause of action if based upon the theory of a collateral undertaking, for the reason that without the aid of parol evidence the plaintiff, Mary M. Ward, for whose benefit the promise was made, is not connected with the contract in any way.

The parol evidence discloses that the plaintiff was the owner of the premises in question, and that Francis E. Ward, whose name appears as agent for the Parmly Building in which these offices are located, was the son of the plaintiff and her agent in business. This fact will more clearly appear when the correspondence is referred to in detail in considering the question whether the theory of original undertaking can be sustained.

The first question presented under this theory is, whether the issues as framed permit its consideration. Before examining the allegations of the complaint in this connection, however, it may be well to briefly state the general relations of these parties as disclosed by the parol evidence. Francis E. Ward was the only witness sworn on the trial, as the defendant Hasbrouck offered no evidence. The defendant Webb failed to answer, and, apparently, was not served with the summons and complaint, being out of the jurisdiction. Ward testified that he was a son of the plaintiff, and that during the years 1892, 1893 and 1894 she owned the business building known as the Parmly Building, 165–167 Broadway, in the city of New York, and that he was her agent for the purpose of renting the building at that time. Ward further stated: "I first met the defendant Webb in December, 1892. He called at my office and asked about the office to rent on the north side of the hallway on the first floor. I first saw the defendant Price

W. Hasbrouck a day or a few days later. Mr. Webb brought him into my office and introduced him to me. * * * This interview to which I now refer was about the 7th day of December, 1892; earlier than the tenth. * * * On the second interview when Mr. Webb and Mr. Hasbrouck were present, Mr. Webb asked me to repeat the proposition that I had made to him that I would rent the office on a sliding scale. The proposition which I made at a former interview that I would rent the office on a sliding scale, and Mr. Webb having introduced Mr. Hasbrouck to me, I asked Mr. Hasbrouck whether he was interested in the enterprise and he said he was. I didn't go very much into detail in that interview as to what his interest was, but I asked him whether he was financially responsible, and he replied that he was, and he gave me his card, his visiting card, having written upon it the name of Mr. Apgar, the cashier of a Broadway bank; he gave me that card as his reference. He then asked me to write a letter to Charles Henry Webb, who was the man who was to rent the office, the rent of which Mr. Hasbrouck was to guarantee, to write Mr. Webb a letter stating explicitly the terms on which I would rent the office to him, and that he, Mr. Hasbrouck, would guarantee the payment of the rent." This question was then asked the witness: " Q. Was anything said at this interview about your giving them an option to renew the lease after the first of May? A. Yes, sir, Mr. Webb said that this enterprise was just starting, that they had contracts that were being considered for the manufacture of these small adding machines; they expected the profits would be very large; the sales would commence immediately and that the concern would be self-supporting, but as I didn't know as it would be self-supporting, and I represented the landlord, and was not sure of the money, I had asked the additional guarantee from Mr. Hasbrouck of the rent. * * * I agreed to give them an option on the office for three years at $2,500 a year. The option was to be exercised on or before the first day of February, 1893."

Mr. Ward further testified that on the 7th day of Decem-

ber, 1892, he wrote a letter to Webb in compliance with defendant Hasbrouck's request. This letter bears date on that day and states, " Referring to your conversation this morning, I beg to offer you, if financial reference of *your associate* be satisfactory, the front office in this building from now until May 1st, 1893, for $625 for the term, payable as follows." (Here follow terms.) " Thereafter at $2,500 p. a. Please regard these terms as confidential to yourself and *your associate.* (Signed) Francis E. Ward." In this letter it will be observed that Mr. Ward does not describe himself as agent for the plaintiff, or any one else.

Mr. Ward further testified that Hasbrouck replied to this letter under date of December 14th, 1892, as follows: " Herewith find enclosed check for $100 on account of rent of office, 167 Broadway, to Mr. Charles Henry Webb." (Signed by Hasbrouck.) This letter contained a postscript, as follows: " The future rent can be collected here, at this office, and I will become responsible for it." (Signed by Hasbrouck.)

Mr. Ward testified that Webb took possession during the month of December, 1892, the rental term beginning on the first of January, 1893.

On the 27th of January, 1893, Ward wrote Hasbrouck as follows: " The option for securing the office now occupied by Mr. C. H. Webb for one year from May 1st next, at $2,500 p. a., will expire at noon on Wednesday next, February 1st." (Signed, Francis E. Ward, *agent for Parmly. Building.*) Webb answered this letter that was addressed to Hasbrouck on the 30th of January, 1893, as follows : " Will you extend the option on room now occupied by me from February 1st to February 15th (at which time I will know whether I am on foot or on horseback) at $200 per month, I to have the privilege of subletting to tenants satisfactory to you and guaranteeing the rent, from May 1st, 1893, to May 1st, 1894." (Signed by Webb.)

On January 31st, 1893, Ward replied to this letter of Webb's, declining to extend the option. In a postscript to that letter he stated : " If you take a lease you may have the

privilege of subletting to satisfactory party." (Signed, Francis E. Ward, agent.)

Under the same date, January 31st, 1893, Webb wrote Ward as follows: "May I report to Mr. Hasbrouck that you will take $200 a month on a year's lease from May 1st, payable monthly in advance?"

On the same date, January 31st, 1893, Hasbrouck wrote Webb as follows: "I think you had better close with Mr. Ward at $200 a month for one year from May 1st, with privilege of subletting. There is always a good deal of bluff about these bloated landlords, and they are always missing such good opportunities, but *in our case it will not pay to move*, so close it and have the lease made out." (Signed by Hasbrouck.)

This last letter is known as Exhibit "G" in the record. Ward testified that after he (Hasbrouck) had sent this letter (Exhibit "G") he had an interview with the defendants. He thus describes it: "I said to Mr. Hasbrouck on this occasion, with reference to remaining, 'Mr. Webb has offered $200 a month for one year after the 1st of May for the office. Do you agree to those terms, and will you guarantee the rent as heretofore?' and he said 'I will.' I asked him whether I should continue to send the bills for rent to him as I had done in the past and he said 'Do so.'" I appears that the defendant Hasbrouck continued to pay the rent until the first of August, 1893.

The next letter in the series is from Hasbrouck to Webb, and bears date June 3rd, 1893. It reads: "My dear Charles Henry: The original of my letter (a copy enclosed by you) to F. E. Ward was during the temporary agreement of rent covering December, January, February, March and April. But I do not complain that he holds me for the rent from May 1st, 1893, to May 1st, 1894, at $200 per month. *That is the way I understood it.* There was, however, a proviso in Ward's conversation with you, as I understood it, to this effect that *we have the privilege of subletting.* If this is so, nothing can *prevent us* from putting up sign 'to let' and get-

ting rent out of other people. De Guin's contract expires 20 June. You had better let him go. I have no use for him, and if you do not care for his services discharge him. *I enclose the schedule drawn up by you for copying — you can return it afterwards or not. Perhaps it had better be included in the archives of the concern and as they are here at \* \* \* send it to me.* Yours truly and affectionately." (Signed by Hasbrouck.)

The letter referred to in the opening sentence of this epistle refers to Hasbrouck's letter to Ward of December 14th, 1892, already quoted and as supplemented by Exhibit G, dated January 31st, 1893, wherein Hasbrouck advises Webb to close the option at $200 a month for a year.

The only other material letter in this correspondence is under date of September 7th, 1893, and is addressed to Webb by the attorneys of Hasbrouck, and reads as follows : " At the request of Mr. Price W. Hasbrouck, we write to ask you to be kind enough to send us at your early convenience authority to Mr. Ward or to some other real estate agent to sub-rent the premises occupied by the Ribbon Adder at 167 Broadway from the first of October, 1893, in order that the amount due for rent may be reduced as far as possible, inasmuch as Mr. Hasbrouck will be compelled *otherwise to pay the full amount for offices for which he has no use.* Please let us have your prompt reply and oblige." (Signed by attorneys.)

This letter was evidently introduced in evidence by the plaintiff as showing that Hasbrouck had at this time, through his attorneys, conceded his liability to the plaintiff.

This correspondence considered by itself does not, as we have intimated, in any way connect the plaintiff, Mary M. Ward, with this transaction. If the plaintiff is to recover upon the theory of a collateral undertaking within the Statute of Frauds, she has failed to establish her cause of action.

We now come to the question whether the theory of original undertaking is within the issues framed. The third subdivision of the complaint reads as follows : " That in the month of December, 1892, the defendant Hasbrouck for a

sufficient consideration *and for his own benefit,* made and entered into an agreement with the plaintiff whereby he undertook and agreed to guarantee the payment of the rent of said office to the plaintiff for and during the whole term of said lease, and including the period of any continuation thereof after May first, 1893, which might be effected under the terms of said agreement upon the defendant Webb exercising the option therein provided for, and the defendant Hasbrouck thereupon undertook and agreed to pay such rent to the plaintiff."

It will be observed that the complaint here expressly charges that defendant Hasbrouck entered into this contract for his own benefit. This can refer to nothing else than the testimony of Ward, which is uncontradicted, to the effect that Hasbrouck was jointly interested with Webb in the Ribbon Adder business.

The fourth subdivision of the complaint reads as follows: " That on or about the thirty-first day of January, 1893, the defendant Webb, pursuant to the said original agreement and with full knowledge and consent *and at the instance and request of the defendant Hasbrouck, exercised his option* of continuing and extending the term of said lease, and entered into a further and supplemental agreement with the plaintiff whereby he extended and continued the term thereof for one year further, to wit: From the first day of May, 1893, to the first day of May, 1894, but at the rent of $200 per month, payable monthly and in advance, in the place of the rent of $2,500 per annum named in the original agreement as the rate for any continuation of the term after May first, 1893, and at or about the same time the defendant Hasbrouck ratified such continuation of the term of such lease at the said rent of $200 per month, and for a valuable consideration *and for his own benefit* undertook and agreed with the plaintiff to guarantee the payment by the defendant Webb of the said rent for the said continuation of the term of the lease, to wit, until May first, 1894, and promised and agreed to pay such rent to the plaintiff."

27

It will be further observed that this subdivision of the complaint alleges the exercise of the option at the instance and request of Hasbrouck, and that he for a valuable consideration and for his own benefit guaranteed the payment of the rent.

We are of opinion that the provisions of the complaint as quoted are quite sufficient to admit of considering Hasbrouck's undertaking upon the theory that it is original in its character. Throughout the correspondence the testimony of Ward was repeatedly corroborated as to Hasbrouck having an interest with defendant Webb in the Ribbon Adder business.

If, therefore, Webb and Hasbrouck were conducting a joint business on the premises in question, it is reasonable, in view of the parol and documentary evidence, to infer that Hasbrouck entered into an original undertaking, which was a part of the agreement of lease, to pay the rent of premises, in the occupation of which he was directly interested, and establishes the allegation of the complaint in respect to the original arrangement and the subsequent exercise of the option thereunder that the contract was "for his own benefit." This being so, the Statute of Frauds relating to fraudulent conveyances and contracts, relative to goods, chattels and things in action, has no application to the situation here disclosed. The covenant to pay rent is a part of the general agreement executed between these parties. The Statute of Frauds, referring to fraudulent conveyances and contracts relating to lands, provided, before the enactment of the Real Property Law, as follows : " No estate or interest in land, *other than a lease for a term not exceeding one year*, nor any trust or power over and concerning lands, or in any manner relating thereto, shall be created &ast; &ast; &ast; unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." (Banks' R. S. [9th ed.] vol. 2, p. 1884, § 6.)

The Real Property Law provides as follows : " A contract for the leasing *for a longer period than one year*, or for the

sale of any real property or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent." (Banks' R. S. [9th ed.], vol. 5, p. 3588, § 224.)

Under the former statute, which provided that leases not exceeding one year need not be in writing, this court held that a parol lease of lands for the term of one year, to commence at a future day, is valid under our Statute of Frauds, and that the provision of the statute relating to contracts not to be performed within one year only applied to transactions respecting personal property; they have no application to contracts concerning lands. (*Young* v. *Dake*, 5 N. Y. 463; *Becar* v. *Flues*, 64 N. Y. 518, 520.)

This agreement in the first instance provided for the lease of the premises for four months from the first day of January to the first day of May, 1893, with an option for an extension thereof for a period not exceeding three years at a stipulated rental. The existence of this option did not render this agreement a lease for a longer period than four months, as it might not be exercised and it was entirely possible for the lease to terminate at the end of the definite period agreed upon.

It has been held that the statute does not include an agreement which is not likely or is not expected to be performed within a year, if when fairly and reasonably interpreted it admits of a valid execution within the time, although it may not be probable that it will be. (*Warren C. & M. Co.* v. *Holbrook*, 118 N. Y. 586, 593; *Kent* v. *Kent*, 62 N. Y. 560.) In the case at bar the exercise of the option was a mere extension of the term of a lease valid at its inception. If, however, regarded as a new lease springing from the exercise of the option, it was for the term of one year made on or about the first day of February, 1893, to take effect May 1st, 1893, for the term of one year, and need not be in writing.

We are of opinion that the agreement between these parties establishes a valid contract of lease between the plaintiff and

the defendants, and that the defendant Hasbrouck was a party to that agreement, and his covenant therein to pay the rent was an original undertaking.

The fact that the judgment of the trial court was sustained by the Appellate Division on a different theory than that now adopted, offers no obstacle to its affirmance here. We have held that a correct decision will not be reversed on appeal because founded upon a wrong reason ; at least, unless where the ground of decision can be seen to have misled a party to his injury. (*Marvin* v. *Universal Life Ins. Co.*, 85 N. Y. 278.)

The appellant takes the additional point that assuming for argument's sake that Hasbrouck entered into a valid contract to pay the rent, he was released from liability thereunder by the direct acts of the plaintiff in refusing to carry out the terms thereof as to sub-letting.

The respondent makes answer to this point as follows : *First,* that this defense is not pleaded, and could not be proved under a general denial; *second,* that the privilege of sub-letting was granted to Webb as well as to Hasbrouck. Further, that the record does not show that Webb was not in actual or constructive possession at the time that Hasbrouck's attorneys requested for their client the privilege of sub-letting, and Ward was justified in making his consent conditional on Webb assenting to a sub-letting of the premises.

These suggestions are a sufficient answer to the point that plaintiff had released Hasbrouck from a compliance with his contract. The fact that Hasbrouck does not stand in the relation of surety, but is an original contracting party, renders the point immaterial.

The judgment appealed from should be affirmed, with costs to the plaintiff.

HAIGHT, MARTIN, VANN and WERNER, JJ., concur ; PARKER, Ch. J., and GRAY, J., dissent.

Judgment affirmed.