## C. W. HULL CO. v. MARQUETTE CEMENT MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. October 1, 1913.)

No. 3,891.

1. CONTRACTS (§ 26*)—MEETING OF MINDS.

Since parties to a contract may settle one term at a time, where plaintiff and defendant negotiated a contract for a cement sales agency in that manner, first agreeing on territory, then on quantity, then on general features, such as terms of payment, return of sacks, etc., then on the amount of monthly deliveries, and finally, after plaintiff wrote fixing the final price per barrel, defendant wired that such price was acceptable, such telegram consummated a binding contract between the parties as a matter of law.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. § 26.*]

2. FRAUDS, STATUTE OF (§ 118*)—MEMORANDUM—SEPARATE WRITINGS.

A complete contract, binding under the statute, may be gathered from letters, writings, and telegrams between the parties relating to the subject-matter of the contract, provided they are so connected that they may be fairly said to constitute one paper relating to the contract.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. § 118.*]

3. FRAUDS, STATUTE OF (§ 159*)—PART PERFORMANCE—QUESTION FOR JURY.

In an action for breach of a cement sales agency contract, evidence *held* sufficient to justify submission to the jury of the question whether a delivery of 995 barrels of cement during the season of 1907 was a delivery under the contract so as to establish sufficient part performance to satisfy the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 378; Dec. Dig. § 159.*]

4. APPEAL AND ERROR (§ 1001*)—VERDICT—REVIEW.

A verdict on an issue of fact, based on sufficient evidence, is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

5. APPEAL AND ERROR (§§ 216, 263*)—OBJECTIONS TO CHARGE—EXCEPTIONS—REQUESTS—NECESSITY.

An objection to the manner in which the trial judge presented a question to the jury is not reviewable where no proper request on the subject was presented and the language used by the court was not directly challenged by an exception.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. §§ 216, 263;* Trial, Cent. Dig. § 627.]

6. SALES (§ 384*)—CONTRACT—BREACH—MONTHLY DELIVERIES—DAMAGES—EVIDENCE.

Where a cement sales agency contract required the buyer to give shipping directions for a certain quantity of cement each month, it had the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entire month in which to give such directions as to the entire installment to be delivered during that month, so that, in ascertaining the market value of cement to assess damages for the buyer's breach of such contract, evidence as to the value of cement at the place of delivery on the last day of each month was properly received, though the price steadily declined during the month.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

**7. WITNESSES (§ 256*)—REFRESHING RECOLLECTION—MEMORANDA.**

In an action for a buyer's breach of a cement sales agency contract, plaintiff's manager, before testifying as to the value of cement on the last days of each month covered by the contract, had made written computations after consulting certain books and records and examined his computations before coming to court to refresh his memory. *Held,* that opposing counsel was not entitled to an inspection of such memoranda as part of the witness' cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 891; Dec. Dig. § 256.*]

In Error to the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Action by the Marquette Cement Manufacturing Company against the C. W. Hull Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John Lee Webster, of Omaha, Neb., for plaintiff in error.

Edward M. Martin, of Omaha, Neb., and Benjamin T. Roodhouse, of Chicago, Ill., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The Marquette Cement Manufacturing Company was plaintiff below and brought this action to recover damages from C. W. Hull Company for the alleged breach of a contract to purchase 50,000 barrels of cement from plaintiff during the season of 1907. The Hull Company, with headquarters at Omaha, Neb., had held the exclusive agency for the sale of plaintiff's cement in certain territory for three years prior to 1907. Early in that year negotiations were entered upon between the companies as to the business for the ensuing season. It was carried on mainly by correspondence and involved questions as to the quantity, price, and territory. On February 13th the territory had been defined and the quantity fixed at 50,000 barrels. On that date plaintiff submitted to defendant, on one of its regular quotation forms, a proposition for the year's business. The document covered such subjects as the terms of payment, the return of sacks, and excuses for failure to perform on the part of the plaintiff, due to causes beyond its control. In this proposal plaintiff offered the defendant cement f. o. b. its mill at Chicago as follows:

| | | |
|---|---|---|
| 10,000 barrels at | 1.40. | |
| 20,000 | " | " 1.50. |
| 25,000 | " | " 1.60. |

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On February 15th the defendant replied to this proposal as follows:

"We have your esteemed favor of the 13st inst., and the general scheme which you suggest is not unsatisfactory, but the prices are too high. We believe we ought to have for this contract a level 10 cts. per barrel better than you offer on your distribution, or else 25,000 barrels at 1.40 and 25,000 barrels at 1.50 to be taken in even weekly amounts during the season."

On February 18th plaintiff replied as follows:

"In reference to yours of the 15th, we will make a price of 1.40 in bulk at our mill on 10,000 barrels, and 1.50 in bulk at our mill on 40,000 barrels, the 50,000 barrels to be taken by you in equal monthly shipments beginning March 1, 1907, all to be shipped before December 1, 1907."

On February 25th defendant submitted a counter proposal inclosing a written contract covering matters as to which the parties were already agreed and proposing prices and monthly shipments as follows:

| | | | |
|---|---|---|---|
| April | 5,000 barrels at 1.40. |
| May | 5,000 | " | " 1.40. |
| June | 5,000 | " | " 1.40. |
| July | 5,000 | " | " 1.40. |
| August | 10,000 | " | " 1.50. |
| September | 10,000 | " | " 1.50. |
| October | 10,000 | " | " 1.50. |

It will be noticed that it changed the time of the first month's delivery from March to April, and also provided for 20,000 barrels at 1.40 instead of 10,000 barrels, as plaintiff proposed in its letter of the 18th.

February 26th plaintiff replied to defendant's letter of the 25th as follows:

"Referring to yours of the 25th inst. just received, with memorandum of agreement inclosed, would say that we are willing to have the shipments begin April 1, 1907, as suggested by you, but cannot accept your order except on the basis of our former proposition, the quantities and prices being as stated in your memorandum of agreement except that the 5,000 barrels for June and July the prices will be $1.50 per barrel, f. o. b. bulk mill. We have several matters of importance pending, and make this proposition good for your acceptance until the close of business February 27th, and must ask you to wire us whether or not you desire to avail yourselves of this our very favorable proposition to you. If we do not hear from you as above, all propositions will be considered as withdrawn."

It will be noted that plaintiff here acceded to defendant's request that deliveries begin April 1st instead of March 1st but refused to accede to its request that the 5,000 barrels to be shipped respectively June and July should be at $1.40 per barrel; plaintiff expressly providing in this final offer that the shipments for these months should be at $1.50 per barrel.

February 27th the Hull Company, complying with the requirements of this letter, wired the Marquette Company as follows:

"One fifty bulk mill for June and July is acceptable to us."

In our judgment this telegram covered the only matter in difference between the parties and brought their minds together into a binding contract.

On February 28th plaintiff wrote the defendant a letter in which it states its understanding to be the same as that expressed in defendant's proposed contract of the 25th, saving only the matter of price for the June and July shipments, and embodied the order as agreed upon by the negotiations culminating in the telegram on one of its regular quotation forms. Neither in this letter nor in the quotation form are any matters introduced as to which the parties had not already reached an agreement, and their only office seems to have been to express in a single statement the terms which had been agreed to from time to time in the correspondence. Neither document contemplates a reply or acceptance by defendant, and they cannot properly be construed as a new offer by plaintiff. The letter begins with the following language:

"Referring to our regular formal proposition of the 13th inst., and our letter of the 26th inst., we have booked your order for 50,000 barrels in accordance with the terms therein."

To this letter, with its formal statement of the result of the negotiations between the parties, and the definite declaration of the understanding of the plaintiff, there was no response by the defendant. From that time on plaintiff went forward filling orders from time to time given by the defendant for cement during the season of 1907.

In a letter of February 28th accepting such an order, plaintiff stated to the defendant as follows:

"This will apply on your contract dated to-day, and is subject to the terms and conditions stated therein."

Similar language is used in accepting other orders. For example, on April 2d plaintiff wrote defendant as follows:

"Above order applies on your 50,000 barrel contract dated February 28, 1907, and is subject to the terms and conditions stated therein, and takes up your April quantity."

The price of cement declined during the summer, and defendant failed to give shipping orders for the quantities which it had agreed to receive from month to month. The record contains numerous letters in which the defendant calls upon the plaintiff to furnish such shipping directions and insists that the defendant take the quantities of cement agreed upon. References are made in these letters to the contract between the parties. Defendant in no way repudiates its obligation or intimates that it had not agreed to accept cement from month to month but simply omitted to give the shipping directions. The record also contains persuasive evidence of communications by telephone between the officers of the plaintiff company and the defendant company on the same subject, and there is also the testimony of Mr. Dickinson, the sales manager of the plaintiff company, that during all this time he had frequent personal interviews with the president of the defendant company, urging him to give shipping directions in accordance with the contract; and that at no time was there any suggestion that the contract was not in full force. The case was submitted to a jury and resulted in a judgment in favor of plaintiff, to review which this writ of error was sued out by the Hull Company.

[1] We are of the opinion that the court would have been justified

in charging the jury that the telegram of February 27th consummated a binding contract between the parties. The court, however, did not do this but submitted to the jury the question as to whether there had been an actual meeting of the minds and directed them to consider the negotiations had between the parties, both before and after February 27th, as bearing upon this question. Defendant insisted that there had been no contract and objected to the court's submitting the question to the jury. As already stated, we think the court would have been justified in directing the jury that the telegram completed a contract between the parties. Defendant cannot complain that the court, instead of doing this, sent the case to the jury on that subject.

Counsel for appellant builds up an imposing argument in this way: He starts with the basic principle that in order to create a contract there must be a definite proposal on one side and an unconditional acceptance on the other. He then takes up the letters and shows that each offer was met by some new term and, applying his rule, lays aside each letter as a nullity because it failed to produce a complete agreement. Parties, however, have the right to reach their agreements in their own way. They may settle upon one term at a time, and, if it is reasonably clear that this has been their method, then, when the last term is agreed upon, their contract is just as complete and binding as if all its terms had been settled by a single act. Here the parties first agree upon territory, then upon quantity, then upon general features, such as terms of payment, return of sacks, etc., then upon the amount of the monthly deliveries, and finally upon the price. At every stage, as the negotiations advance, it seems clear to us that the parties carry forward the terms as to which they have already agreed. On February 26th the only matter in difference was whether the 10,000 barrels to be delivered in June and July should be at the price of $1.40 or $1.50 a barrel. Defendant's telegram of the 27th settled that and thus consummated the agreement. That is the reasonable interpretation of the written communications between these parties. We are also satisfied that this was the intent and understanding of both parties on the 27th of February. The doubt and final denial on the part of defendant were caused by the steady decline in the price of cement during the season of 1907.

[2] Again the documents introduced in evidence are amply sufficient to constitute such a memorandum as satisfies the statute of frauds. It "is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings, and telegrams between the parties relating to the subject-matter of the contract and so connected with each other that they may be fairly said to constitute one paper relating to the contract." Ryan v. United States, 136 U. S. 68, 83, 10 Sup. Ct. 913, 918 (34 L. Ed. 447). See, also, Freeland v. Ritz, 154 Mass. 259, 28 N. E. 226, 12 L. R. A. 561, 26 Am. St. Rep. 244; Crystal Palace Flouring Co. v. Butterfield, 15 Colo. App. 246, 61 Pac. 479; Collyer v. Davis, 72 Neb. 887, 101 N. W. 1001.

[3-5] The trial court submitted to the jury the question as to whether there was an agreement between the parties, and, if so, whether there

was such a part performance under it as to satisfy the statute of frauds. The evidence is very clear that 995 barrels of cement were delivered by plaintiff to defendant during the season of 1907, and that these deliveries were made by the plaintiff with the understanding on its part that they were under the contract and written notice thereof so stating mailed to the defendant. The evidence is also clear that this cement was received and actually used by defendant. Its counsel, however, urges that the evidence fails to show that these various deliveries were accepted and received *under the contract.* We think there was ample evidence to justify submitting that question to the jury, and the jury by their verdict have found that these deliveries were so accepted and received by defendant. The finding of the jury is conclusive upon that question. Some complaint is made of the manner in which the trial judge presented this question to the jury in the charge. No proper request, however, on the subject was prepared by the defendant, nor was the language used by the court directly challenged by an exception. It follows that no complaint can be made on the subject in this court.

[6] The defendant had the entire month in which to give shipping directions as to the installment of cement to be delivered during that month. In ascertaining the market value of cement for the purpose of assessing damages, the court, therefore, properly received evidence as to the value of cement at the place of delivery on the last day of each month, although the price had steadily declined during the month.

[7] Plaintiff's sales manager testified as to the value of cement on the last days of each month, covered by the terms of the contract. On cross-examination it was developed that, in arriving at his values the witness had made some written computations after consulting books and records, and that he had kept a memorandum of such computations and examined the same before coming to court for the purpose of refreshing his memory. Counsel for defendant insisted that these memoranda be produced, and because they were not produced, as they were in Chicago, he moved that all the testimony of the witness on the question of market value be stricken out and assigns error because his motion was denied. It is quite clear that these written computations were not the record of any transaction between parties but were simply a record of the witness' mental operations. If he could have made his computations mentally, there would have been no memoranda. The fact that he used pencil and paper does not change the law. The rule of evidence which counsel invokes has no proper application to the facts. Witnesses testifying as to value may base their opinions upon what they read and what they hear, as well as upon their own experience, and what they read does not become a written memoranda of which cross-examining counsel is entitled to an inspection.

We have examined the other errors referred to in the brief and do not find them of sufficient importance to call for special comment.

The judgment of the District Court is affirmed.