## JOHNSON & HIGGINS v. HARPER TRANSP. CO.

(District Court, D. Massachusetts. April 13, 1915.)

1. INSURANCE ⌖⟶103—BROKERS—PERFORMANCE OF CONTRACT—DELAY—RESPONSIBILITY.

An insurance broker, who by agreement with defendant was to have the placing of insurance on defendant's fleet of steamers for two years, was not responsible for any delay in taking steps to procure such insurance prior to the date on which defendant furnished it with instructions as to the number, amount, and forms of policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 130; Dec. Dig. ⌖⟶103.]

2. INSURANCE ⌖⟶103—BROKERS—PERFORMANCE OF CONTRACT—DUTIES OF AGENT.

Where defendant agreed that plaintiff, an insurance broker, should have the placing of insurance on defendant's fleet of steamers for two years at rates to be approved by defendant before final acceptance, it devolved upon plaintiff to get and submit rates from underwriters, this being the usual course of business, and defendant was not required to indicate the rates which it would approve.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 130; Dec. Dig. ⌖⟶103.]

3. INSURANCE ⌖⟶102—BROKERS—PERFORMANCE OF CONTRACT—WAIVER OF BREACH.

Where, under a contract, plaintiff, an insurance broker, was to have the placing of insurance on defendant's fleet of steamers for two years at rates to be approved by defendant before final acceptance, and a dispute arose as to whether it was plaintiff's place to procure and submit offers from underwriters, or defendant's duty to indicate rates which it would approve, but defendant receded from its position, indicated the rates which it would approve, and directed plaintiff to secure the insurance at once, it thereby recognized the contract as still existing, and waived any failure of plaintiff to proceed to get and submit rates.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ⌖⟶102.]

4. INSURANCE ⌖⟶106—BROKERS—PERFORMANCE OF CONTRACT—TERMINATION.

Defendant agreed that plaintiff, insurance broker, should have the placing of insurance on defendant's fleet of steamers for two years at

⌖⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rates to be approved by defendant before final acceptance. The first of defendant's 1911 policies ran out on August 21st, and under an agreement with a trust company holding title to the vessels had to be renewed 30 days before that date. Defendant did not furnish plaintiff instructions as to the number, amount, and forms of policies until July 26th, when it directed plaintiff to secure the insurance at once. The amount of insurance required was large, and both parties knew that part of it would probably be obtained in London, and that considerable time would be required to secure it upon the most advantageous terms. On August 1st, two nonbusiness days in England having intervened in the meantime, defendant's directors had an interview with plaintiff's representative, in which he gave them to understand that he was endeavoring to obtain the insurance at the rate which defendant had approved, but stated that he doubted whether he would be able to do so at the approved rates. Defendant immediately notified plaintiff that it was no longer authorized to act, and thereupon procured insurance through other persons. On August 6th plaintiff offered to defendant cover notes covering all the insurance at the specified rate. *Held*, that defendant had no right to terminate the contract, and its action in doing so constituted a breach of the entire contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞106.]

5. INSURANCE ☞96—AGENCY FOR INSURED—CONTRACTS—REQUISITES AND SUFFICIENCY.

Defendant wrote an insurance broker, referring to a resolution of its board of directors authorizing a contract with the broker for the placing of insurance on defendant's fleet of steamers for two years at rates to be approved by the board of directors before final acceptance, and stating that "we herewith enter into a contract with you for the insurance covering said fleet as per the terms of said resolution." The broker acknowledged the letter, and stated that in good time it would take up the matter of renewals, and see that they were arranged at the lowest possible rate, and upon the most favorable terms procurable. *Held*, that this constituted a contract between the parties.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 126; Dec. Dig. ☞96.]

6. INSURANCE ☞96—BROKERS—CONTRACT OF AGENCY—CONSIDERATION.

Defendant was indebted to plaintiff, an insurance broker, who was pressing for payment. Plaintiff offered to grant an extension of credit if defendant would give it its insurance business for three years, and in the early part of 1912 an agreement was reached that plaintiff should have the placing of insurance on defendant's steamers for two years. The duration of the extension to be granted was not very exactly stated, but both parties understood that defendant was to make payment as fast as it reasonably could from its receipts as they came in, and that the account should in any event be paid in full on or about July 1, 1912. *Held*, that under the law of New York, where the contract was made, the forbearance to sue or press for payment and plaintiff's agreement to act for defendant in placing the insurance for the two ensuing years constituted a sufficient consideration for defendant's agreement that plaintiff should have the placing of such insurance, as in that state forbearance to bring a suit which a party is on the point of instituting, and a promise, express or implied, to give further time, are sufficient considerations to support a promise by the other party, though there is no definite agreement as to the length of the time for which the forbearance should continue.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 126; Dec. Dig. ☞96.]

7. FRAUDS, STATUTE OF ☞45—AGREEMENTS NOT TO BE PERFORMED WITHIN ONE YEAR.

Plaintiff was an insurance broker, and had placed insurance on defendant's fleet of steamers in 1911, expiring in 1912. In the early part

of 1912, defendant agreed that plaintiff should have the placing of its insurance for the next two years at rates to be approved by it. Defendant broke the contract, and plaintiff brought suit. In the contract, the declaration, and the correspondence between the parties there appeared such expressions as "place insurance for the next two years," "act as your brokers," "handling this insurance for the next two years," "appointing us as your insurance representatives for at least two renewals of your current policies," "to handle the insurance on your fleet for at least two renewals, commencing 1912," and "to place insurance on the defendant's fleet for two years." It appeared that it would have been possible to go into the market within one year from the date of the contract and procure, not only renewals of the policies then in force, but future renewals to follow the policies written in 1912; but this would have been an unusual transaction, which could not have been put through upon terms advantageous to defendant, and would have involved elements of uncertainty, as with respect to vessels lost during the first year, and would have subjected defendant to liability for two years' premium, instead of one. *Held*, that it was not contemplated that defendant should be put to these disadvantages, and it was intended that the relations existing with respect to the 1911 insurance should be continued, and that the future business should be done in the usual way, and hence the contract was not one which, according to the reasonable interpretation of its terms, could be performed within a year, and was within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 67, 68, 70, 71; Dec. Dig. ☞45.]

**8. FRAUDS, STATUTE OF ☞118—SUFFICIENCY OF MEMORANDUM—CORRESPONDENCE.**

The entire correspondence between parties, resulting in a contract between them, may be resorted to in determining whether there is a sufficient memorandum in writing to satisfy the New York statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. ☞118.]

**9. FRAUDS, STATUTE OF ☞108—SUFFICIENCY OF MEMORANDUM—STATEMENT OF CONSIDERATION.**

Plaintiff was an insurance broker, and had placed insurance on defendant's fleet of steamers in 1911, for which defendant was indebted to it, and was pressing for payment. On November 10, 1911, defendant wrote plaintiff, requesting an extension of credit, and suggesting dates for the postponed payments. On November 18th plaintiff replied, declining to grant the extensions as matters then stood, but stating that, if they could have an understanding that they would act as defendant's brokers for three years, plaintiff's finance committee would probably be willing to extend credit on the conditions therein stated as to dates of payment. The letter also suggested that the consent of a trust company holding title to the vessels would have to be obtained, provided that collections for losses should be held against the premium accounts, and stated that this arrangement would not apply to any future premiums. On December 18th defendant wrote plaintiff, referring to an oral restatement of the position outlined in plaintiff's letter, except as to the dates and amounts of payment and sums which might be received for losses, and including also arrangements as to the premiums on 1912 policies, and stating that they were in accord with this position, and were going to get the approval of defendant's directors to the making of a contract for the handling of the insurance for the next two years. On December 30th plaintiff wrote defendant that they had defendant's telephone message to the effect that defendant was prepared to negotiate a contract along the lines suggested in the letter of November 18th. On January 12th defendant's directors adopted a resolution to make a contract authorizing plaintiff to place the insurance for two years at rates to be approved by the board of directors. On January

17th plaintiff wrote defendant, referring to its letter of November 18th, and to the vote of the directors, and suggesting dates of payment, and, though defendant replied in writing, it did not controvert the statements therein, or in the letter of December 30th. On March 8th defendant wrote plaintiff, quoting the resolution of its directors, and stating that "we herewith enter into a contract with you for the insurance covering said fleet as per the terms of said resolution," and on March 11th plaintiff replied, acknowledging receipt of such letter, and stating that in good time they would take up the matter of renewals. *Held*, that plaintiff's forbearance to sue or press for payment, and its agreement to act for defendant, constituting the consideration for defendant's agreement, sufficiently appeared in the correspondence, and there was therefore a sufficient memorandum in writing to bind defendant.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 214–221; Dec. Dig. ⊙➡108.]

**10.** FRAUDS, STATUTE OF ⊙➡129—SUFFICIENCY OF MEMORANDUM—STATEMENT OF CONSIDERATION.

Where part of the consideration for defendant's agreement that an insurance broker should have the placing of insurance on defendant's steamers for two years was the broker's forbearance to sue or press for payment of an indebtedness, and pending the negotiations resulting in the contract the broker did forbear to sue or press for payment, the consideration for defendant's promise was to that extent received by defendant before the contract was completed, and the contract was to that extent executed, and in so far as defendant's promise was given in exchange for a present executed consideration the statute of frauds did not apply.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. ⊙➡129.]

**11.** INSURANCE ⊙➡105—DUTIES OF AGENT—FIDELITY.

Plaintiff was an insurance broker, and had placed insurance on defendant's fleet of steamers in 1911, and in the early part of 1912 an agreement was reached that it should have the placing of such insurance for the next two years. It acted merely as a middleman, and defendant knew this, and knew that plaintiff was to receive compensation from the underwriters for its services, and the agreement was entered into on that footing, and was intended to continue the arrangement which had existed as to the 1911 insurance. *Held* that, while plaintiff to the extent which it had agreed to act for defendant was bound to act faithfully, its right to commissions was not defeated by the fact that in its effort to bring the parties together it advised defendant to raise its price, and the underwriters to lower theirs, at the same time giving each party to understand that it was doing all it could to secure the most favorable terms for such parties; it not appearing that this interfered with its undertaking, constituting part of the contract, to see that the insurance was procured at the lowest possible rate, and on the most favorable terms procurable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 131; Dec. Dig. ⊙➡105.]

**12.** INSURANCE ⊙➡106—AGENTS—BREACH OF CONTRACT—TERMINATION OF AUTHORITY.

Defendant authorized an insurance broker to place insurance on its fleet of steamers for two years, but without giving sufficient time to place the insurance after furnishing the necessary instructions, its directors adopted a resolution terminating the contract, and notified the broker that it was no longer authorized to act, and thereupon procured the insurance for the first of the two years through another broker. *Held*, that the broker was entitled to treat this as a termination of the entire contract, and to have its damages assessed accordingly.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ⊙➡106.]

⊙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. DAMAGES ☞23—BREACH OF CONTRACT—DAMAGES RECOVERABLE.
The damages recoverable for the breach of a contract are such as are within the contemplation of the parties as the proximate, natural, and probable consequences of a breach of the contract, and such as will put the plaintiff in as good a position as nearly as possible as it would have been in but for the breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ☞23.]

14. DAMAGES ☞24—BREACH OF CONTRACT—DAMAGES RECOVERABLE.
Damages which are remote, conjectural, or purely speculative are not recoverable for the breach of a contract; but it is not necessary that they should be computable with mathematical accuracy, and the fact that they may be to some extent contingent, and not capable of being accurately determined, does not prevent recovery.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 65–67; Dec. Dig. ☞24.]

15. INSURANCE ☞106—CONTRACT OF AGENCY—BREACH—DAMAGES RECOVERABLE.
Defendant agreed that plaintiff, an insurance broker, should have the placing of insurance on its fleet of steamers for two years at rates to be approved by defendant before final acceptance. Without giving plaintiff sufficient time to place the insurance, it terminated the contract and placed the insurance through another broker. A few days later plaintiff offered to defendant cover notes covering all the insurance for the first of the two years at the rate which defendant had approved, on which its commissions would have amounted to $8,453.94. *Held*, that these commissions were recoverable as damages for defendant's breach of the contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞106.]

16. INSURANCE ☞106—CONTRACT OF AGENCY—BREACH—DAMAGES RECOVERABLE.
Both parties having evidently contemplated that the size of defendant's fleet, the rates of insurance, and the amount and kind of insurance would be substantially unchanged for both years, and plaintiff having been able to meet the rates approved by defendant for the first of the two years, the commissions which plaintiff would have earned on the insurance for the second year, less expenses incident to the placing of the insurance, were not too remote, contingent, or uncertain, and were recoverable for the breach.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞106.]

At Law. Action by Johnson & Higgins, a corporation, against the Harper Transportation Company. Judgment for plaintiff.

Warner, Warner & Stackpole, of Boston, Mass., for plaintiff.

Stimson, Stockton, Livermore & Palmer and Goodwin, Procter & Ballantine, all of Boston, Mass., for defendant.

MORTON, District Judge. This is an action at law to recover for an alleged breach of contract by the defendant to employ the plaintiff as its insurance broker or representative. A jury was waived and the case was tried before me upon fact and law.

The defendant operated a fleet of steamers and barges employed in coastwise transportation on the Atlantic coast. The plaintiff is a corporation engaged in the business of a broker in marine insurance. It had placed for the defendant during the early or middle part of the

year 1911 a large amount of insurance on the vessels composing the defendant's fleet. The defendant did not pay promptly the premiums due on this insurance, and in November, 1911, appears to have been indebted therefor in the sum of more than $100,000, due in part to the plaintiff for premiums paid by it to the underwriters on the defendant's account, and in part to the underwriters with whom the insurance had been placed by the plaintiff. At that time the plaintiff began to press the defendant, both orally and by letters, for payment of this account. The defendant was unable to make payment, and by letter to the plaintiff dated November 10, 1911, requested extensions of credit running about a year. The plaintiff declined to accede to this request, but suggested, in a letter bearing date of November 18, 1911, that if it could be sure of the defendant's insurance business for three years it would consider an extension of credit. Both parties understood at this time that, if a satisfactory arrangement was not reached between them, the plaintiff was likely to proceed at once to enforce payment of its overdue account, something which the defendant greatly desired to avoid. The defendant informed the plaintiff that it was prepared to agree in principle to the suggestions made to it in the plaintiff's letter of November 18, 1911, the exact details of the arrangement being left open; and, relying upon this assurance, the plaintiff took no steps at that time to enforce payment of its demand. There were several conferences between the parties. Finally they agreed that the plaintiff should have the defendant's marine insurance business for two more years, subject to the latter's approval as to rates, should forbear immediate suit and pressure, should pay to the underwriters on the defendant's account the balance of the 1911 premiums, and should grant to the defendant an extension of credit. The duration of the extension was not very exactly stated at the time when the agreement was entered into. Both parties then understood that the defendant was to make payments as fast as it reasonably could from its receipts as they came in, that dates and amounts of future payments should be settled later, and that the account should, in any event, be paid in full by July 1, 1912, or thereabouts. Substantial payments on account were made by the defendant to the plaintiff between November 18 and January 12, 1912; and the result of the arrangement finally agreed upon was not substantially different in the forbearance part of it from the proposal in the plaintiff's letter of November 18.

By January 12, 1912, the parties had reached a satisfactory understanding as above stated, and on that date the defendant's directors passed the following vote:

"Resolved, that a contract be entered into with Messrs. Johnson & Higgins authorizing them to place insurance on the fleet of the Harper Transportation Company for the next two years, commencing on or about October 1, 1912, at rates to be approved by the board of directors of the Harper Transportation Company before final acceptance."

The plaintiff was within a few days notified orally of this resolution. Thereafter both parties understood that a contract as above stated was in force between them.

About the 1st of March, 1912, the plaintiff called the defendant's attention to the fact that there was nothing in writing confirming the oral understanding, and requested that the matter be put into writing. In consequence of this the defendant wrote to the plaintiff, on March 8, 1912, as follows:

"Pursuant to the following resolution passed on January 12, 1912, as follows:

"Resolved, that a contract be entered into with Messrs. Johnson & Higgins authorizing them to place insurance on the fleet of the Harper Transportation Company for the next two years, commencing on or about October 1, 1912, at rates to be approved by the board of directors of the Harper Transportation Company before final acceptance"—we herewith enter into a contract with you for the insurance covering said fleet as per the terms of said resolution.

"Very truly yours."

To which the plaintiff replied on March 11, 1912, as follows:

"Dear Sir: We have your favor of the 8th inclosing copy of resolution passed at your January 12th meeting and also note your confirmation of the contract with us to handle the insurance on your fleet for at least two renewals, commencing 1912. This we have placed on file and in good time will take up the matter of renewals and will see that they are arranged at the lowest possible rate and upon the most favorable terms securable."

It is these two letters, in connection with the correspondence more particuarly referred to hereafter, which are relied upon by the plaintiff as constituting a memorandum in writing of the contract, upon which recovery is sought in this action.

[1] The first of the 1911 policies ran out on August 21, 1912, and by the terms of the agreement between the defendant and the Trust Company holding title to the vessels had to be renewed at least 30 days before that date. In June, of that year the plaintiff called the defendant's attention to the impending expirations and requested definite instructions as to the amount and character of the insurance desired for the coming year. There were interviews between the parties upon this subject. The plaintiff wrote, on July 15, 1912, both to the president and treasurer of the defendant, saying, in substance, that the matter of renewals required immediate attention, and that it had not yet received definite instructions for placing the insurance. It is clear that the plaintiff was entitled to have such instructions, and that the delay up to this point, at least, was the fault of the defendant. Instructions as to the number, amount, forms of policies, etc., were given to the plaintiff on or about July 26, 1912.

By the terms of the contract the defendant reserved the right to approve the rates at which the insurance was to be placed by the plaintiff. A dispute arose between the parties as to whether, according to the contract, it was the business of the plaintiff to procure and submit offers from underwriters of rates on the required insurance for approval by the defendant, or of the defendant to indicate rates which it would approve. The rates on marine insurance in large amounts are not uniform, and are reached by bargaining between the underwriters, the broker, and the insured in each particular case. The plaintiff's objection to the method proposed by the defendant was not so much that

it violated the contract, as that it was inexpedient, because the plaintiff thought that the trading could be more advantageously done on the defendant's behalf by proposing a low rate to the underwriters and working up with them. The plaintiff did not definitely refuse to do as requested, and the parties continued to argue about the matter.

[2, 3] By the strict terms of the contract, I think the usual course of business was to be followed, and that it devolved upon the plaintiff to get and submit rates from the underwriters; but, in view of the defendant's omission to give definite instructions as to the insurance, and upon all the circumstances shown, I do not think that the plaintiff's failure to get and submit rates constituted a breach of the contract. On July 26th the defendant, having in the meantime procured an offer of insurance from another broker, receded from its position, named to the plaintiff rates which it would approve, and directed the plaintiff to secure the insurance at once. This was a recognition by the defendant of the contract as still existing. If there had been a breach of it by the plaintiff, it was at that time waived by the defendant. Forbes v. Appleyard, 181 Mass. 354, 63 N. E. 894; So. Pacific Co. v. Fore River Co. (C. C. A. 1st Circuit) 219 Fed. 378, 384, 385, 135 C. C. A. 120.

[4] The amount of insurance required was large. Both parties knew that part of it would probably be obtained in London, and that considerable time would be required to secure it upon the most advantageous terms. The plaintiff promptly started to do so. Six days later, on August 1, 1912, two nonbusiness days in England having intervened, the defendant notified the plaintiff that it was no longer authorized to act in the matter, and arranged to procure the insurance through other persons, who dealt, in part at least, with underwriters who had been approached by the plaintiff. The causes assigned by the defendant in the vote of its board of directors for terminating the contract were that the plaintiff had not placed the insurance and had not "made any proposition" regarding it. Prior to the revocation of the plaintiff's authority to act for it, the defendant's directors had an interview with the plaintiff's representative on August 1st, at which the latter said, in substance, that he was working on the matter and hoped to place the insurance, although he doubted whether he would be able to do so at the rates which the defendant had approved. He gave the defendant's directors clearly to understand that the plaintiff was at that time endeavoring to obtain the insurance at the approved rate and might or might not be successful. The defendant, immediately after this interview, on the same day, passed the vote last referred to and closed with the other broker, whose offer was then before it. The time between July 26th and August 1st was wholly insufficient for the placing of the insurance in question. The defendant had no right to terminate the contract as it did, and its action in doing so constituted a breach of the entire contract.

I see no reason to doubt that the plaintiff would have been able to get the insurance on as favorable terms as the other broker secured, and could have placed it, if left free to do so. Under date of August 6, 1912, it offered to the defendant cover notes covering all the insur-

ance at the specified rate. Its commission thereon would have amounted to $8,453.94.

The plaintiff's substitute declaration was drawn after I had, in conference with counsel, intimated in a general way what my findings were likely to be; and I find that, except as stated otherwise in this opinion, the allegations of fact in the first 11 paragraphs of it are true.

The defenses relied upon are: (1) That there was no definite contract, and no legal consideration for the defendant's agreement with the plaintiff; (2) that the agreement was not to be performed within a year, was therefore within the statute of frauds of the state of New York, where it was made, and is not evidenced by any sufficient memorandum in writing; (3) that the defendant was justified in repudiating the contract by the plaintiff's breach thereof.

[5, 6] As to 1: The defendant said: "We herewith enter into a contract with you." (Letter of March 8th, supra.) It is plain that there was a contract between the parties, and that there was a sufficient consideration for the defendant's agreement. This consideration consisted of the forbearance of immediate suit and pressure by the plaintiff, and of its agreement to extend credit as above stated. The plaintiff also agreed to act for the defendant in placing the insurance for the two ensuing years. The contract was made in New York and was to be performed there. The rights of the parties are to be determined according to the law of that state. By the law of New York forbearance to bring a suit which a party is on the point of instituting, and a promise, express or implied, to give the debtor further time, are sufficient considerations to support a promise by the other party, even in cases where there is no definite agreement as to the length of the time which the forbearance should continue. Strong v. Sheffield, 144 N. Y. 392, 39 N. E. 330; Traders' Nat. Bank v. Parker, 130 N. Y. 415, 29 N. E. 1094; Muri v. Greene, 191 N. Y. 201, 83 N. E. 685; Union Nat. Bank v. Leary, 77 App. Div. 332, 79 N. Y. Supp. 217. Upon all the evidence I find and rule that there was a contract, and a good consideration for the defendant's promise; and the first point of defense fails.

[7] As to 2, the defense based upon the statute of frauds: The contract authorized Johnson & Higgins "to place insurance on the fleet of the Harper Transportation Company for the next two years, commencing on or about October 1, 1912." The first question is whether this was a contract which could not be performed within one year, and therefore comes within the statute. The plaintiff says that it could be performed within that time, because on the evidence it would have been possible to go into the market within a year from the date of the contract and procure, not only renewals of the policies then in force, but also future renewals to follow the policies written in 1912. I think it would have been possible to do so; but the test is whether the contract gave the plaintiff the right to perform it in that way. "The question is * * * whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." Gray, J., in Warner v. Texas & Pac. Ry. Co., 164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed.

495; McGregor v. McGregor, 21 Q. B. D. 424 (1888). The expressions "place insurance * * * for the next two years," "act as your brokers," "handling this insurance for the next two years," "appointing us as your insurance representatives for at least two renewals of your current policies," "to handle the insurance on your fleet for at least two renewals, commencing 1912," "to place insurance on the defendant's fleet for two years," are used by the parties in different places in the memorandum, declaration, and correspondence as referring to the same thing. Read in the light of their context and surrounding circumstances, they plainly signify a continuance for two more years of the relations which had existed between the plaintiff and the defendant in respect to the 1911 insurance.

To complete the contract within one year would have been an unusual transaction, which could not have been put through upon terms advantageous to the defendant, which would have involved elements of uncertainty (e. g., a vessel insured under a 1912 policy might be lost during that year, and not be in existence when the 1913 renewal was due to attach), which would have subjected the defendant to liability for two years' premiums, instead of one, and which was plainly outside of any reasonable construction of the contract. In order to obtain the best rates, the insurance for each year had to be arranged for as a whole, and not by merely renewing individual policies as they expired. With this qualification, both parties understood by the contract that Johnson & Higgins were to have the placing of the defendant's marine insurance in 1912 and in 1913 as the policies expiring in those years ran out. It was not the understanding of either party that the defendant was to be put to any disadvantages of the kinds above suggested by reason of this contract. It contemplated future business to be done in the usual way. So construed, the contract could not be performed within a year, whether it be regarded as taking effect from the date of the communication to the plaintiff of the defendant's vote of January 12, 1912, or from the date of the formal letter from the defendant stating the contract, March 8, 1912. The significance of the expression, "commencing on or about October 1, 1912," is not perhaps entirely clear. The defendant has made no contention that the contract, if made, did not cover the insurance which began to expire on August 21, 1912. Indeed, it attempted to cancel the contract for the plaintiff's alleged failure to act before August 1st. The plaintiff in its letter of March 11, 1912, refered to the contract as covering "at least two renewals, commencing 1912," omitting the words "October 1." The renewals contemplated by the parties were plainly those to be effected in the year 1912 and in the year 1913. "About October 1" was apparently taken as an approximate average date on which the 1912 policies should attach. The contract was not one which, "according to the reasonable interpretation of the terms," could be performed within a year, and is within the statute of frauds.

[8, 9] It is therefore necessary to determine whether there is a sufficient memorandum in writing to satisfy the New York statute of frauds, the law as to which is shown by the following cases, viz.:

Kent v. Kent, 62 N. Y. 560, 20 Am. Rep. 502; Blake v. Voight, 134 N. Y. 69, 31 N. E. 256, 30 Am. St. Rep. 622; Warren Chemical Co. v. Holbrook, 118 N. Y. 586, 23 N. E. 908, 16 Am. St. Rep. 788; Ward v. Hasbrouck, 169 N. Y. 407, 419, 62 N. E. 434; Seymour v. Warren, 197 N. Y. 1, 71 N. E. 260. The principal ground upon which the sufficiency of the memorandum is attacked is that it does not disclose the consideration moving from the plaintiff, and therefore does not completely show an enforceable contract between the parties. The entire correspondence between them may be resorted to. J. Spencer Turner Co v. Louis Robinson et al., 55 Misc. Rep. 280 at 286, 105 N. Y. Supp. 98; C. W. Hull Co. v. Marquette Cement Mfg. Co., 208 Fed. 260, 125 C. C. A. 460. In the defendant's letter to the plaintiff of November 10, 1911, an extension of credit is explicitly requested, and dates for the postponed payments are suggested. The plaintiff replied on November 18, 1911, declining to grant the extensions requested as matters then stood, but saying that "on certain modified lines our company would give favorable consideration to an extension of credit." The plaintiff further says in this letter:

"If we could have an understanding with you that we would act as your brokers say for a period of three years, our finance committee would probably be willing to extend credit on the following conditions."

Then follow statements of the amounts due for the different kinds of insurance, aggregating about $110,000, and proposed dates of payment extending to June 15, 1912. The letter then suggests that the consent of the trust company, which held title to the vessels, would have to be obtained, in order that the extension of credit might not operate to discharge its liability, if any, for the insurance premiums. The letter also provides that collections for losses should be held against the premium accounts, and adds:

"Whatever arrangement we may agree upon would, of course, simply apply to the premiums under discussion, and any further premiums will, in the absence of any specific agreement, be subject to the usual cash settlement."

This letter presents a complete and carefully worked out plan to relieve the defendant from its immediate difficulties.

The defendant wrote on December 18, 1911, that:

"We were all in accord with the position taken by you [which was, in substance, an oral restatement of that outlined in the letter just referred to, except as to dates and amounts of payments and sums which might be received for losses, and included also arrangements for the impending premiums on the 1912 policies] and are going to get the approval of the remaining directors of entering into a contract with your good. selves for the handling of this insurance for the next two years."

I think—and I find—that this letter, fairly construed, has the same meaning as if the words "on that basis" were added after the final words in it, "next two years."

The plaintiff wrote on December 30, 1911:

"We have your telephone message to the effect that you are prepared to negotiate a contract with us along the lines suggested in our letter of November 18th"

—and then proceeded to discuss the details of the postponed payments. On January 12th the defendant's directors voted to make a contract with the plaintiff. The plaintiff's letter of January 17, 1912, refers explicitly to its letter of November 18th and to the vote of the defendant's directors, and then suggests dates of payment. The defendant's reply, dated January 18, 1912, refers to "the matter of adjusting and arranging with you for the payment of the balance due you." The defendant, although replying in writing to the letter of January 17th, never in any way controverted the statements therein, or in the plaintiff's letter of December 30th, but, on the contrary, acted as if the statements in those letters were correct. And then followed the letters of March 8th and 11th, plainly intended as memoranda in writing of a contract theretofore made. The plaintiff's agreement to act for the defendant is plainly shown by the correspondence.

The defense on this point is of the most technical character. There can be no doubt that the defendant made the promise sued on; it is in black and white over the defendant's signature, supported by a resolution of its board of directors. The defendant contends that it cannot be held to its promise, because a statement of the exact consideration which was to be received therefor, and which the defendant has in fact fully received, cannot be found in writing. It is sufficient, however, if, taking the writings as a whole, the court can ascertain from them with reasonable certainty what the entire contract between the parties was. Of course, the writings are to be read in the light of the surrounding facts. So construed, it seems to me, and I accordingly find and rule, that they evidence with sufficient clearness and certainty the contract sued on.

[10] Inasmuch as the promise upon which the defendant is sought to be charged was signed by it in its letter of March 8th, there may be some doubt, even under the New York law, whether that promise is unenforceable, even if there is no sufficient memorandum to bind the other party to the entire consideration furnished by it. Certainly a statement of such consideration is very easily discovered by the New York courts. Seamore v. Warren, 179 N. Y. 1, 71 N. E. 260. The law of Massachusetts is, of course, different from that of New York on the point under discussion. Browne on Statute of Frauds (5th Ed.) § 39 et seq. At the time when the contract was finally made, a substantial part of the consideration moving from the plaintiff—i. e., the forbearance of suit and pressure while the negotiations were pending—had already been received by the defendant, and further consideration of the same sort was received by the defendant immediately after the making of the contract. The contract was to this extent at least unilateral. At the time when the memorandum of March 8th was signed, the consideration moving from the plaintiff had been still further executed. In so far as the defendant's promise was given in exchange for a present executed consideration moving from the plaintiff, the statute of frauds does not apply.

Upon all the evidence, I find and rule that there was a sufficient memorandum to satisfy the New York statute of frauds.

As to 3: The final question is whether, assuming that there was a

valid contract, and assuming that there is a sufficient memorandum, the defendant was justified by the conduct of the plaintiff in disregarding it. As I understand the defendant's case upon this point, the breaches alleged to have been committed by the plaintiff are of two sorts: (1) That the plaintiff so delayed and failed in performing its part of the contract that the defendant, in order to keep its fleet insured, as it was bound to do under the terms of the trust agreement, was obliged to employ other persons to procure the insurance; and (2) that the plaintiff did not act with the required fidelity to the defendant's interest.

As to the first of these: For reasons before stated, I do not think that the delay prior to July 26th is any more chargeable to the plaintiff than to the defendant. Having on that date approved rates and given definite instructions as to the insurance desired, the defendant was bound to give the plaintiff a reasonable time thereafter in which to obtain the insurance. There was not time enough between July 26th and August 1st for the plaintiff to do so. I find that there was no breach of the contract in this particular by the plaintiff.

[11] As to the second of these points: The plaintiff was an insurance broker; it is not an insurance agent, as those words are commonly understood. It did not act for or represent insurance companies as their duly appointed agent in transacting the business of insurance; its business was placing insurance for persons who desired to secure it, and procuring risks for underwriters who had insurance to offer. It was nothing more or less than a middleman. The defendant knew this, and also knew that the plaintiff was to receive compensation from the underwriters for its services. The agreement between the plaintiff and the defendant was entered into on that footing, and was intended to continue for two years more the arrangement which had existed between the parties at the time when the plaintiff placed for the defendant the 1911 insurance. The plaintiff had no authority to agree upon insurance, either on behalf of the defendant or of the underwriters. The defendant decided what insurance it desired, and claims that it had the right not to approve rates therefor submitted by the plaintiff if the insurance could be procured more cheaply elsewhere. The defendant's contention that the plaintiff was bound to the conduct of a fiduciary in its dealings with the defendant, while the defendant was free to deal with the plaintiff on a competitive basis, is not free from difficulty. To the extent to which the plaintiff had agreed to act for the defendant, it was bound to act faithfully; but I think it would be holding the plaintiff to an accountability altogether too strict to say that it cannot recover commissions, to which it would otherwise be entitled, if in its efforts to bring the parties together it advised the defendant to raise its price and the underwriters to lower theirs, at the same time giving each party to understand that it was doing all it could to secure for it the most favorable terms. If such representations can be regarded as anything more than in the nature of "seller's talk," they are not shown in the present case, and I so find, to have interfered with the plaintiff's undertaking, as expressed in its letter of March 11, 1912, "to see that they [the

renewals] are arranged at the lowest possible rate and on the most favorable terms procurable."

[12, 13] The remaining questions relate principally to the matter of damages. The contract is entire in respect to the agreement and the consideration, but separable in respect to performance. The plaintiff was entitled to treat the vote and written notification of termination, and the employment of another broker to place the insurance for the year 1912–13, and the placing of it through him, as a termination of the entire contract, and to have its damages assessed accordingly. Pierce v. Tenn. Coal, etc., Co., 173 U. S. 1, 11, 19 Sup. Ct. 335, 43 L. Ed. 591. The damages recoverable are such as were within the contemplation of the parties as the proximate, natural, and probable consequences of a breach of the contract, such as will put the plaintiff in as good a position, as nearly as possible, as it would have been but for the breach. U. S. v. Behan, 110 U. S. 338, 344, 4 Sup. Ct. 81, 28 L. Ed. 168. Damages are not recoverable which are remote, or conjectural, or purely speculative. On the other hand, it is not necessary that they should be computable with mathematical accuracy, and the fact that they may be to some extent contingent and not capable of being accurately determined does not prevent recovery. Randall v. Peerless Motor Car Co., 212 Mass. 352, 380, 99 N. E. 221; Pierce v. Tenn. Coal Co., supra.

[15] Applying these principles, it follows that the plaintiff is entitled to recover as damages the loss on commissions to which it would have been entitled if the contract had been performed and of which it has been deprived by the defendant's wrongful termination of the contract. The commissions on the 1912–13 business on the facts above found are clearly recoverable. They amount to $8,453.94; and the defendant is liable therefor.

[16] I also think, although this, perhaps, is not so clear, that the plaintiff is entitled to recover damages for the loss of commissions on the 1913–14 business. The probability that such commissions would be earned was plainly within the contemplation of both parties, and was, indeed, one of the inducements for the making of the contract. The plaintiff's loss of them was within the contemplation of the defendant when it broke the contract and is a natural, and not too remote, consequence of the breach. Nor does it seem to me that they are so contingent or uncertain as to be unassessable. The plaintiff was able to meet the approved rates in 1912; the probability plainly is that it would have been able to do so in 1913. It is true that there can be no positive certainty as to this, nor as to what the rates would be next year, nor the size of the defendant's fleet, nor the amount and kind of insurance required upon it. In making this contract, however, both parties evidently contemplated that conditions in these respects were likely to be substantially unchanged for both years. Howard v. Stillwell & Bierce Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, 35 L. Ed. 147. The decisions upon this point are distinctly favorable to the plaintiff. Courts have gone a long way in allowing plaintiffs to recover damages as to which there was uncertainty and contingency. Chaplin v. Hicks [1911] 2 K. B. 786; Richardson v. Mellish, 2 Bingham, 229; Neal v. Jefferson, 212

Mass. 517, 99 N. E. 334, 41 L. R. A. (N. S.) 387, Ann. Cas. 1913D, 205; Speirs v. Union Drop Forge Co., 180 Mass. 87, 61 N. E. 825.

The commissions which the plaintiff would have been entitled to, as nearly as can now be estimated, on the 1913 business which it has lost, would have amounted to $8,175.50. There would have been a slight expense in connection with cables, etc., the exact amount of which does not appear. I estimate the net worth to the plaintiff of that business at $8,000, and I find that it is entitled to recover that amount as damages for the loss sustained by it through the defendant's breach of the contract in respect to the 1913 business.

The defendant has presented 167 requests for rulings of law and findings of fact. I have fully indicated in the foregoing memorandum of decision such findings of fact and rulings of law as seem to me necessary to a decision of the case. I give such of the defendant's requests as are contained therein, or are consistent therewith; the others I refuse. Of the plaintiff's requests, it is only necessary to pass upon the ninth, which I give; the case having been decided, as the foregoing memorandum indicates, without regard to the evidence referred to in this request.

Judgment for the plaintiff for $16,453.94, with interest from the date of the writ.