FREDERICK D. BLAKE, Respondent, *v.* CARL VOIGT et al., Appellants.

On November 27, 1888, the parties entered into an agreement reduced to writing, but not signed by defendants, by which defendants, who were commission merchants, agreed to pay to plaintiff a specified commission on all goods the latter "could influence" to be sent to them for sale for one year, beginning. December first, thereafter, either party having the privilege to terminate the contract by notice in June. The contract was terminated by defendants in June, under the option. In an action upon the contract, *held*, that the reservation of the option took it out of the Statute of Frauds.

*It seems* that had it not been for the option, the contract would have been void, under the statute.

(Argued April 29, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made December 26, 1890, which affirmed a

judgment of the General Term of the City Court of New York affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover commissions alleged to be due from the defendants to the plaintiff upon the proceeds of certain goods, which he caused to be consigned to them upon their promise to pay him at the rate of one and one-half per cent on the amount of the sales. The defendants pleaded, among other defenses, that the agreement was not in writing and was, therefore, void under the Statute of Frauds, because, according to its terms, it was not to be performed within one year from the making thereof.

The facts, so far as material, appear in the opinion.

*Charles E. Hughes* for appellants.

*C. Bainbridge Smith* for respondent.

VANN, J. In the month of November, 1888, the plaintiff was engaged in business at Rockville, Conn., and the defendants were commission merchants in the city of New York. During that month the plaintiff had several interviews with one of the defendants, the result of which, as stated by him in his testimony, " was that I was to cause to be consigned all the goods that I could influence to him, for which I was to receive one and one-half per cent commission on the sales of such goods, and he requested me to put that in writing in the form of a letter to him which I did and delivered to him in person." The letter, which bore the date of its delivery, November 27, 1888, was signed by the plaintiff and addressed to the defendants, but was not signed by them. It referred to the interviews that the parties had " had together relating to forming business relations," and after stating as the result thereof the agreement alleged in the complaint, closed in these words: " This agreement to take place and effect December 1, 1888, for one year." The plaintiff testified that the letter embraced the agreement as previously made; that he delivered it to one of the defendants, who read it and said

it was correct, but added "that on June following this, either party could make the contract null and void by due notice, null and void as to continuance," to which the plaintiff assented. Pursuant to the agreement, the plaintiff procured goods to be consigned to the defendants at various times prior to June 3, 1889, when it was terminated by them under the option permitting it.

The main question requiring discussion is whether the trial court erred in denying the motion of the defendants to dismiss the complaint, upon the ground that the agreement in question was void under the Statute of Frauds, because it "could not, according to its terms, be performed within one year and was not reduced to writing and subscribed by the party to be charged."

The learned General Term of the City Court gave no reasons for its decision, but the Court of Common Pleas, in construing the last clause of the letter, held that although the minds of the parties met on the twenty-seventh of November, the agreement did not "take place" until the first of December, because they expressly deferred the "making of it" until the latter date. There is no evidence, however, tending to show that any agreement was in fact made on the first of December, or that the parties had any negotiations after November twenty-seventh. The agreement, therefore, was actually made in November, and if the parties provided as a part thereof that it was not to be an agreement until the first of the following month, that provision was an essential part of the whole and was clearly in force prior to the first of December.

We think that the natural construction of the clause under consideration requires us to hold that the parties intended thereby to simply fix the date when the agreement was to go into practical effect by the consignment of goods, and it appears that the first consignment was actually made on the day thus designated.

We are also of the opinion that the agreement, made November 27, 1887, was to continue for one year from

December 1, 1888, unless terminated under the option reserved by the parties. The expression "one year," as the context shows, refers to the date which immediately precedes it, and not to the date when the agreement was made, which is not expressly mentioned in any part of the letter. Thus actual performance of the business in contemplation was to begin on that day and was to continue for one year thereafter.

We are hence brought to the question whether the reservation of an option to terminate the contract within the year took it out of the operation of the statute. We agree with the learned counsel for the defendants that the actual termination of the agreement within the year does not affect the question, as the contract must be construed as it stood when it was made. (Browne Stat. of Frauds, § 279.)

The ultimate question, therefore, is whether a contract, which by the terms applicable to the leading subject thereof is not to be performed within a year, is taken out of the statute by the fact that it was a part of such contract that either party might rightfully terminate it within the year. It is contended that termination is not performance, but rather the destruction of the contract, and this is true where there is no provision authorizing either of the parties to terminate as a matter of right. Performance, however, is simply carrying out the contract by doing what it requires or permits. The contract under consideration required the plaintiff to procure consignments of goods to the defendants during one year from December 1, 1888, and that they should pay him a commission therefor, but it permitted either party to terminate it in June, 1889. The permission was part of the agreement and effective action under it was performance of that part. The contract could be performed in either of two ways: 1. By performance according to its terms without exercising the option. 2. By performance according to its terms until June and then exercising the option. By either mode the contract would be fulfilled in a sense originally contemplated by the parties, and by neither would performance be frustrated, because the contract would be executed in a way that the

parties agreed that it might be executed. The contingency did not defeat the contract, but simply advanced the period of fulfillment. The statute applies to "every agreement that by its terms is not to be performed within one year from the making thereof." (4 R. S. [8th ed.] p. 2590, § 2.)

As it was the design of the statute not to trust the memory of witnesses beyond one year, it has been repeatedly held that it does not apply to a contract which, consistently with its terms, may be performed within that period. The contract in question, therefore, as we construe it, is free from the restraint of the statute. This conclusion finds support in the adjudged cases which, although uniform in this state, are somewhat at variance in other jurisdictions.

In *Trustees of the First Baptist Church* v. *Brooklyn Fire Ins. Co.* (19 N. Y. 305), the action was upon a fire insurance policy dated July 21, 1845, for one year, renewed July 21, 1846, for a second year, and July 21, 1847, for a third year. The property insured was destroyed by fire September 10, 1848. While the original policy was running the parties agreed verbally that until notice to the contrary should be given by one to the other, the defendant should renew the policy from year to year, without further notice, and give a certificate of renewal; that the plaintiff should pay the premium therefor on demand, and the two renewal certificates were given pursuant to such agreement. The court in declaring the agreement valid said: "It is not the meaning of the statute that the contract must be performed within a year. If it can be so performed consistently with the language in which the parties have expressed themselves, in other words, if the obligation of the contract is not by its very terms or necessary construction to endure for a longer period than one year, it is a valid agreement, although it may be capable of an indefinite continuance. An agreement which either party can terminate at any time by a notice to the other, may be binding so long as the notice is not given, but it is not within the language or policy of the statute." (*Plimpton* v. *Curtiss*,

SICKELS—VOL. LXXXIX.    10

15 Wend. 336; *Moore* v. *Fox,* 10 Johns. 244; *Fenton* v. *Emblers,* 3 Burr. 1279 ; 2 Parsons on Contracts, 316.)

The case came before the court a second time, when the first decision was expressly approved (28 N. Y. 153, 163), and although repeatedly cited since, it has never been criticised so far as our investigation has discovered. (*Kent* v. *Kent,* 62 N. Y. 560, 564; *Van Woert* v. *A. & S. R. R. Co.,* 87 id. 538, 542.)

In *Smith* v. *Conlin* (19 Hun, 234), the plaintiff verbally agreed with the defendants in October, 1876, to teach school until October 1, 1877, and a year longer if no notice should be given by either party, at least two weeks prior to the expiration of the first year, that the services should then cease. After a careful review of the authorities it was held that the agreement was not within the statute, although one of the learned justices dissented from that conclusion. The subject is illustrated by the following cases, which were not controlled by the statute : An agreement to continue "as long as the parties are mutually satisfied" (*Greene* v. *Harris,* 9 R. I. 401) ; or for two years, or "until I have made the net profit of $50,000" (*Hodges* v. *Richmond Mfg. Co.,* Id. 482); or to work until an infant became of age, although that event could not occur for seven years (*Peters* v. *Westborough,* 19 Pick. 364) ; or "for the term of five years, or so long as A. shall continue to be agent of" a certain company (*Roberts* v. *Rockbottom Co.,* 7 Met. 46) ; or to cut trees at any time within ten years (*Kent* v. *Kent,* 18 Pick. 569); or any agreement which provides *prima facie* for a performance beyond the year, provided it can, consistently with its terms, be fulfilled within that time. (*Peter* v. *Compton,* 1 Smith's L. C. [7th ed.] 577, note p. 581; see also *Warren Chem. & Mfg. Co.* v. *Holbrook,* 118 N. Y. 586, 593; *Dresser* v. *Dresser,* 35 Barb. 573; *M'Lees* v. *Hale,* 10 Wend. 426 ; *Burlingame* v. *Mandeville,* 7 N. Y. S. R. 858; Browne Stat. of Frauds, § 281; 1 Reed Stat. of Frauds, 197, 201.)

Many contracts referred to in the exhaustive note to *Peter* v. *Compton* (*supra*), apparently intended to extend longer than

cne year, were held valid on account of the implied contingency of death, when that event would necessarily conclude further performance. It is difficult to see why such a contingency, although not named and not necessarily contemplated by the parties, should save a contract, unless a contingency, provided for by express stipulation and acting on the contract in the same way, should have the same effect. If "an agreement to do or to refrain is fully performed by him who keeps it until he is no longer capable of doing or refraining" (*Doyle* v. *Dixon*, 97 Mass. 208), why is not an agreement to do or refrain fully performed by one who keeps it until he can no longer do or refrain, because by the authorized action of the other party the contract is terminated. The possibility of further performance is effectually ended in either case, and the contract is as necessarily completed by the one event as the other. While the whole contract hangs on life in the one instance, it hangs on the reserved option in the other. Where the parties agree to carry on business for a period exceeding one year, or until the happening of an event which may transpire before the end of the year, we think that by principle, as well as by the weight of authority, the contract is protected from the operation of the statute.

After examining all of the exceptions that are relied upon to reverse the judgment, we think that it should be affirmed, with costs.

All concur, HAIGHT and BROWN, JJ., in result.

Judgment affirmed.