**DUNDEE WINE & SPIRITS, LTD.,**
Plaintiff,

v.

**GLENMORE DISTILLERIES COMPANY, Defendant.**

No. 64-C-1089.

United States District Court
E. D. New York.

Feb. 4, 1965.

Samuel Kaufman, New York City, for plaintiff.

Breed, Abbott & Morgan, New York City, for defendant, Charles H. Tuttle, and Gerald J. Craugh, New York City, of counsel.

BARTELS, District Judge.

This is a motion pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A., for summary judgment dismissing the complaint and for judgment upon defendant's counterclaim against plaintiff in the amount of $86,488.96 plus interest, together with costs and disbursements, upon the ground that the causes of action set forth in the complaint are barred by the statute of frauds and that there is no genuine issue as to any material fact involved in the action.

In the first cause of action plaintiff alleges, in substance, that an agreement was entered into between the defendant and the plaintiff's incorporators on November 22, 1963, which was subsequently, on December 5, 1963, confirmed by defendant and plaintiff, whereby the defendant agreed to appoint the plaintiff its distributor of liquor products in the New York metropolitan area and by May of 1964 to appoint it the sole and exclusive distributor of its products in said area and to supply plaintiff with adequate stocks of its products upon extended credit terms and to arrange for certain selling assistance to the plaintiff if the plaintiff "would hire and keep employed as its General Manager one, IRVING KOERNER" and if plaintiff obtained an initial capital investment of $50,000 and the necessary liquor licenses to act as defendant's distributor in the New York metropolitan area and would promote defendant's products and perform certain other services in connection therewith, and that said appointment by defendant as such distributor "would last as long as the aforesaid IRVING KOERNER was employed by said corporation as General Manager"; that plaintiff performed the terms of the agreement to be performed by it as defendant's liquor distributor and otherwise employed continuously and still has in its employ Irving Koerner but that

the defendant has breached this agreement in that, among other things, it has "failed to constitute plaintiff as its sole and exclusive distributor in the metropolitan New York area", by reason of which breach plaintiff claims it has suffered damages to the extent of $500,000 over and above a credit of $81,929.60, which it admits is due defendant for merchandise received.

In the second cause of action plaintiff alleges that between December 5, 1963 and the institution of the suit, plaintiff with the full knowledge and consent of the defendant, expended certain monies and performed certain work, labor and services for defendant in the New York metropolitan area in connection with the sale, promotion and reputation of defendant's products, which work, labor and services were reasonably worth the sum of $500,000.

In answer, the defendant interposes a general denial and an affirmative defense to both causes of action on the ground that both causes of action are based upon the alleged agreement which is void and unenforceable because by its terms it was "not to be performed within one year from the making thereof". Defendant also counterclaims for $86,448.96 for goods sold and delivered, for which it seeks a summary judgment.

For the purpose of the motion it is admitted that the alleged agreement was oral and that there was no written memorandum to support it. Pertaining to its counterclaim the defendant attached to its moving papers a photocopy of its accounts receivable record showing a series of entries for goods sold and delivered, amounts of invoices, credit memoranda and payments for the period from March 2, 1964 to August 24, 1964, and an affidavit indicating a balance due of $86,448.96.

## I

The most difficult question presented by this motion is whether the alleged agreement is enforceable under the statute of frauds requiring an agreement which "By its terms is not to be performed within one year from the making thereof" [1] to be in writing. The answer under New York law as construed by the Court of Appeals, is far from clear. According to the early New York cases an oral agreement which could be entirely performed within a year consistently with its terms, was outside of the statute even though such performance was neither probable nor expected.[2] The leading case upon the subject is Blake v. Voigt, 134 N.Y. 69, 31 N.E. 256 (1892), holding that an oral agreement which by its terms was not to be performed within a year was nevertheless taken out of the statute by reason of the fact that both parties had an option to terminate the agreement at any time within a year. The court observed that termination of the agreement was not performance but rather the destruction of the contract, except where there was an express "provision authorizing either of the parties to terminate as a matter of right" (p. 72, 31 N.E. p. 256), in which event such termination did not defeat the contract but simply advanced the period of fulfillment.

1. Section 31 of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, then in effect (now General Obligations Law, § 5–701, McKinney's Consol.Laws c. 24–A) provides in part:
"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;
"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;".

2. Rochester Folding-Box Co. v. Brown, 55 App.Div. 444, 66 N.Y.S. 867 (1900), aff'd, 179 N.Y. 542, 71 N.E. 1139 (1904); Blake v. Voigt, 134 N.Y. 69, 31 N.E. 256 (1892); Warren Chemical & Mfg. Co. v. Holbrook, 118 N.Y. 586, 593, 23 N.E. 908, 910, 16 Am.St.Rep. 788 (1889); Kent v. Kent, 62 N.Y. 560, 564, 20 Am. Rep. 502 (1875); Trustees of the First Baptist Church v. Brooklyn Fire Ins. Co., 19 N.Y. 305 (1859).

Later there followed a series of cases such as Cohen v. Bartgis Bros. Co. (an oral agreement to pay commissions to an employee upon all orders placed by Resolute Paper Products Corporation at any time), 264 App.Div. 260, 35 N.Y.S.2d 206 (App.Div., 1st Dept. 1942), aff'd, 289 N.Y. 846, 47 N.E.2d 443 (1943); Martocci v. Greater New York Brewery (an oral agreement to pay commissions to plaintiff on all sales made by defendant to P. Lorillard Company), 301 N.Y. 57, 92 N.E.2d 887 (1950); Zupan v. Blumberg (an oral agreement to pay plaintiff commissions on all advertising accounts obtained for defendant *so long as* the account was active), 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957), all of which were considered by the Court of Appeals in reaching its conclusion in Farmer v. Arabian American Oil Co., 2 Cir. 1960, 277 F.2d 46, 85 A.L.R.2d 1321, cert. denied, 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). There an oral agreement to employ a physician in Saudi Arabia for the *duration* of defendant's oil well operations in that country was deemed outside of the statute upon the ground that the defendant's obligation was expressly limited to the duration of the defendant's operations and that such a provision authorized the defendant to terminate as a matter of right under Blake v. Voigt, supra. Subsequently, in the same year the case of Nurnberg v. Dwork, 12 A.D.2d 612, 208 N.Y. S.2d 799 (1960), aff'd, 12 N.Y.2d 776, 234 N.Y.S.2d 721, 186 N.E.2d 568 (1962), was decided by the Appellate Division, First Department. In that case the court held within the statute an oral agreement to negotiate for retail outlets for the defendants in certain stores which required the defendants to pay 1% of the gross sales on such concessions established at any future time *so long as* the concessions were maintained by the defendants. Three years later the Second Circuit had occasion in Perrin v. Pearlstein, 2 Cir. 1963, 314 F.2d 863, to consider an oral agreement by the defendant-manufacturer and the plaintiff-broker to permit the plaintiff to represent the defendant *so long as* they remained in their respective businesses. Relying upon Nurnberg as the latest interpretation of the New York statute by New York courts, the Circuit Court held that this agreement was within the statute and that their decision in Farmer to the effect that the limitation of performance to the duration of defendant's operations was an express authorization to terminate as a matter of right, could no longer be followed.

These somewhat conflicting decisions present a perplexing problem. The troublesome question is whether the happening of the event within a year terminates the performance in accordance with the terms of the contract or whether such event destroys the contract. If there is an express option on the part of either party to terminate their respective performances at any time such as that in the Blake case, then the answer is easy. There are a number of events, however, which could happen within a year and terminate performance but which would not constitute performance in fulfillment of the terms of the contract but would effect the destruction of the contract. Thus insolvency, bankruptcy, dissolution of defendant's business, retirement from business, impossibility of performance and breach of contract are examples of events which would terminate performance by means of the destruction of the contract rather than by fulfillment of its express terms. See RCA v. Cable Radio Tube Corporation, 2 Cir. 1933, 66 F.2d 778, 784, cert. denied, 290 U.S. 703, 54 S. Ct. 373, 78 L.Ed. 604 (1934); Zupan v. Blumberg, supra; Cohen v. Bartgis Bros. Co., supra.

In Cohen the court stated "We must distinguish between 'performance' which fulfils the contract and circumstances which defeat its purpose. 2 Williston on Contracts, Rev. ed., Section 499." (35 N.Y.S.2d p. 208). In Martocci the court said that if the terms of the contract had included an event which might end the contractual relationship of the parties within a year, the possible liability of the defendant beyond that time would not subject the contract to the statute.

and in Zupan the court in referring to a service contract of indefinite duration under which the plaintiff agreed to obtain orders on behalf of the defendant, stated that it was within the statute because "performance is dependent, not upon the will of the parties to the contract, but upon that of a third party" (2 N.Y.2d p. 550, 161 N.Y.S.2d p. 429, 141 N.E.2d p. 821).

The answer to the problem might be different if, in considering such agreements of indefinite duration, the emphasis were placed upon, whether performance was completed in accordance with the terms of the agreement upon the happening of the event within one year [3] rather than upon, whether the agreement was terminated by the act of either party pursuant to an express provision in the nature of an option.[4] There are some New York cases which indicate that the happening of an event, other than by the will of the parties, within a year terminates the period of performance agreed upon and hence removes the agreement from the bar of the statute.[5] These cases are not in accordance with the apparent holding of the controlling New York authorities. While they might be susceptible of some nice factual distinctions, their reasoning appears to be predicated upon Professor Corbin's analysis of the "so long as" type of agreement.[6] It is also possible for an agreement to be subject to a right of defeasance within a year by an express provision as well as by operation of law and since defeasance is not performance, the agreement would be barred by the statute. The fact that defeasance was covered by this express provision would make it nonetheless defeasance.[7]

When termination of the contract which can be classified as performance removing the agreement from the statute is referred to in the New York cases, reference is generally to an event over which either one or both of the parties have exclusive control.[8] In other words,

3. 2 Corbin on Contracts § 446 (1950) suggests that a promise to perform "so long as" a certain condition exists, which could be eliminated or terminated within a year, is without the statute because the termination of the condition would terminate the duration of the performance agreed upon and such performance would be fulfillment of the contract and not its destruction. That, however, is the question.
  Mar-Bond Beverage Corp. v. Dublin Distributors, Inc., 9 A.D.2d 951, 195 N.Y.S. 2d 730 (Dep't 1959); Lenz v. World-Wide Automobiles Corp., 9 Misc.2d 32, 168 N.Y.S.2d 853 (1957), aff'd, 5 A.D.2d 1051, 174 N.Y.S.2d 226 (4th Dep't 1958); High v. Pritzker, 58 N.Y.S.2d 706 (S.Ct.1945), aff'd, 269 App.Div. 1015, 59 N.Y.S.2d 57 (App.Div.1st Dep't 1945); Suslak v. I. Rokeach & Sons, Inc., 269 App.Div. 779, 55 N.Y.S.2d 78 (App.Div.2nd Dep't 1945), aff'd, 295 N.Y. 799, 66 N.E.2d 581 (1946); cf., Zupan v. Blumberg, supra; Nurnberg v. Dwork, supra.

4. Cf., Blake v. Voigt, supra; Farmer v. Arabian American Oil Co., supra.

5. Mar-Bond Beverage Corp. v. Dublin Distributors, Inc., supra; Lenz v. World-Wide Automobiles Corp., supra; High v. Pritzker, supra; Suslak v. I. Rokeach & Sons, Inc., supra.

6. See note 3, supra.

7. 3 Williston on Contracts (Third Edition) §§ 495, 498B and 499, makes a distinction between agreements containing a defeasance clause and those providing for performance in the alternative. (See Coan v. Orsinger, 1959, 105 U.S. App.D.C. 201, 265 F.2d 575.) The author states that an oral promise of performance might be subject to a right of defeasance within a year by an express provision of the contract as well as by operation of law, in which event the contract would be barred by the statute, while an agreement providing for an alternative performance which might be accomplished within a year is without the statute, indicating that a promise providing for a performance "during the continuance of" a certain condition is a promise providing for alternative performance which could be completed within a year. Cf., Warner v. Texas & P. Ry. Co., 1896, 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495. The problem is whether the happening of the event constitutes defeasance or marks the end of the alternative performance.

8. RCA v. Cable Radio Tube Corporation, supra; Zupan v. Blumberg, supra; Martocci v. Greater New York Brewery, supra; Blake v. Voigt, supra; Cohen v. Bartgis Bros. Co., supra; Krawitz v.

it was an event not only covered by an express provision over which the parties had control but also one which the parties contemplated would constitute performance even though the event occurred within one year; not an event or choice depending upon outside circumstances or the act of a third party.[9] Outside events terminating the agreement are more likely to be events of defeasance rather than events measuring alternative performance. Here defendant's liability in *maintaining* the plaintiff as the sole and exclusive distributor of its products was to continue and endure *so long as* Koerner remained in the plaintiff's employ. The failure of Koerner to continue in this employment either because he was discharged by the plaintiff for incompetence[10] or because he resigned, would be a circumstance which according to the express terms of the agreement would not constitute performance but, on the contrary, would be an event which would destroy the contract and defeat its purpose. Although expressly mentioned in the agreement, the condition was a condition of defeasance and not of alternative performance. Moreover, performance was dependent not upon the will of the parties but upon outside circumstances and the will of a third party. The Court concludes that the alleged agreement between the parties was by its terms not performable within a year and was therefore void and unenforceable under the New York statute of frauds. Sack v. Beasley, 282 App.Div. 153, 122 N.Y.S.2d 174 (1953); One Television, Inc. v. One Fifth Ave. Operating Corp., supra; Preminger v. Wynwood Mills, Inc., 31 Misc.2d 873, 222 N.Y.S.2d 371 (1961). Accordingly, the motion for summary judgment dismissing this cause of action will be granted.

## II

Defendant further contends that plaintiff's second cause of action in *quantum meruit* for monies expended and the reasonable value of the work, labor and services rendered in promoting defendant's products must also be dismissed because it is predicated upon the identical agreement alleged in the first cause of action which is barred by the statute of frauds.

It is axiomatic that an agreement which is void under the statute of frauds is void for all purposes and cannot be the basis of another action. Dung v. Parker, 52 N.Y. 494 (1873). On the other hand, a party to an express agreement which is unenforceable because of the statute of frauds may nevertheless have a cause of action for reasonable compensation for services actually rendered independently of any express agreement. Smith v. Kirkpatrick, 305 N.Y. 66, 111 N.E.2d 209 (1953); Potter v. Emerol Mfg. Co., 275 App.Div. 265, 89 N.Y.S.2d 68 (App.Div. 1st Dep't 1949); Elsfelder v. Cournand, 270 App.Div. 162, 59 N.Y.S.2d 34 (App.Div. 1st Dep't 1945). The issue raised is whether the second cause of action is founded upon the provisions of the alleged void agreement or upon a claim which is different from and independent of said agreement. The fact that an identical amount of damages is demanded in each cause of action is immaterial. The test is whether the allegations re-plead, in substance or effect, the terms and the conditions of the void agreement or whether they set

Gross, 156 N.Y.S.2d 576 (S.Ct. 1956); Platt v. Whitelawn Dairies, Inc., 3 Misc. 2d 19, 150 N.Y.S.2d 391, aff'd, 2 A.D.2d 683, 153 N.Y.S.2d 583 (1956); One Television, Inc. v. One Fifth Ave. Operating Corp., 206 Misc. 1090, 139 N.Y.S.2d 430, aff'd, 1 A.D.2d 819, 150 N.Y.S.2d 153 (1956). Cf., Harris v. Home Indemnity Co., 6 A.D.2d 861, 175 N.Y.S.2d 603 (App.Div. 1st Dep't 1958).

9. While in Perrin v. Pearlstein, supra, the event was included as an express provision in the agreement and was within the control of the parties, it was an event of discontinuance of business referred to in Cohen, which is implied as a condition of performance in the agreement at all events. These conditions apparently fall in the same category as impossibility of performance.

10. Good faith would require the plaintiff to otherwise continue his employment.

forth an entirely different theory of recovery.

An analysis of the complaint indicates that the plaintiff in its second cause of action has disregarded the alleged agreement and has pleaded a self-sustaining and independent claim for compensation in *quantum meruit* for monies expended and services rendered. Therefore, the motion for summary judgment with respect to this cause of action is denied.

### III

Based upon its counterclaim, its moving papers and the plaintiff's admission that it is indebted to the defendant for $81,072.96, the defendant contends that it is entitled to a summary judgment for $86,488.96 but for the purpose of the motion only (not for the trial) is willing to reduce the application for summary judgment to the amount of $81,072.96.

Plaintiff contends that the defendant is not entitled to the entry of a judgment at this time for the amount admittedly due on the counterclaim until the defendant's liability under the complaint is determined, asserting that only then would it be possible to ascertain which party is indebted to the other. This principle would be applicable if the claim stated in the counterclaim arose out of the same contract or transaction set forth in the complaint so that it could be said that the claim of the plaintiff and the claim of the defendant were inherently inseparable and consequently should be adjudicated at the same time and together.[11] The claim of the plaintiff in this case is based upon a breach of an alleged agreement to appoint the plaintiff the sole distributor of the defendant's products and to render certain services in connection therewith and also for money expended and work and services performed on defendant's behalf. The claim of the defendant, on the other hand, is based upon goods sold and delivered and is not predicated upon a breach of the alleged franchise agreement. It is not a compulsory counterclaim under Rule 13(a), Fed.Rules Civ.Proc., 28 U.S. C.A. Consequently, the claims are separate and distinct and plaintiff's claim cannot defeat the defendant's motion for summary judgment if the defendant is otherwise entitled to such relief.

But this conclusion does not solve the problem. Defendant claims that under the circumstances it is entitled to a separate judgment against the plaintiff for the amount of its counterclaim under Rules 54(b) and 62(h), Fed.Rules Civ.Proc., 28 U.S.C.A. Rule 54(b) provides that when more than one claim is presented the Court may expressly direct the entry of a *final* judgment as to one or more such claims but fewer than all upon the express determination that there is no reason for delay but in the absence of such determination and direction, any order or decision which adjudicates fewer than all of the claims shall not terminate the action and the order or decision is subject to revision before entry of the judgment. Rule 62(h) simply provides for a stay of enforcement of a *final* judgment entered under Rule 54(b) upon such conditions as may be necessary to protect the beneficiary of the judgment. The application for summary judgment is made under Rule 56(a) and (d), which has been construed as proscribing a summary judgment for only a part of a claim but authorizing in such a case only an order specifying the non-controverted facts. 6 Moore's Federal Practice, par. 56.20(3), pp. 2306–8 (1953 Ed.); Leonard v. Socony-Vacuum Oil Co., 7 Cir. 1942, 130 F.2d 535; Audi Vision, Inc. v. RCA Mfg. Co., Inc., 2 Cir. 1943, 136 F.2d 621, 147 A.L.R. 574. If Rule 54(b) is to have any application to this case, the defendant must be entitled to a *final* judgment as to one or more *single* claims. The defendant's claim is predicated upon a series of purchases and sales. These do not

---

11. Gaetano Marzotto & Figli S. P. A. v. G. A. Vedovi & Co., S.D.N.Y.1961, 28 F.R.D. 320; Omark Indust., Inc. v. Lu- banko Tool Co., Inc., 2 Cir. 1959, 266 F.2d 540, 541.

constitute separate and distinct claims because the claim which the defendant seeks to enforce is part of a sum due and owing in the amount of $86,488.96, representing all of these sales, and the cause of action is based upon that single claim. The fact that certain items representing different sales and debits constitute elements of that part of the whole claim for which it now seeks summary judgment, is immaterial. Biggins v. Oltmer Iron Works, 7 Cir. 1946, 154 F.2d 214. Under these circumstances the Court has no authority to enter a final judgment for a portion of the whole claim of $86,488.96 in the sum of $81,-072.96 as urged by the defendant. Consequently, both Rule 54(b) and Rule 62 (h) have no application to this case. However, pursuant to Rule 56(a) and (d) the Court will issue an order of the pre-trial type provided in Rule 16, Fed. Rules Civ.Proc., 28 U.S.C.A., specifying that the sum of $81,072.96 is admittedly due from the plaintiff to the defendant.

Motion for summary judgment on defendant's counterclaim is denied but an order may be entered in accordance with the above.

Settle order within ten (10) days on two (2) days' notice.