OPINION OF THE COURT
Ivan Warner, J.
This court determines that the alleged agreement or promise sued upon is unenforceable under section 5-701 (subd a, par 1) of the General Obligations Law, inasmuch as there was no note or memorandum of it in writing subscribed by the defendant, MBPXL Corp., or by its lawful agent, wherein such alleged agreement or promise "[b]y its terms [was] not to be performed within one year from the making thereof’.
*896 In effect, the complaint alleges that on or about June, 1977, the plaintiff, acting in its capacity as a commission merchant handling sales of meat and poultry by slaughterers to wholesalers and retailers, entered into an oral agreement with the defendant, a slaughterer, whereby the defendant allegedly agreed to pay plaintiff a commission of 35^ per hundredweight on all sales of the defendant’s products (1) billed directly to the plaintiff or (2) sold by the defendant to any and all customers solicited by the plaintiff.
The complaint further alleges that in August, 1977, the plaintiff, in reliance upon this agreement, arranged a meeting which was attended by representatives of both parties to the instant action and by the meat buyer of Waldbaum’s Inc. (hereinafter "Waldbaum’s”). And, that subsequent to this meeting and as a direct result thereof, Waldbaum’s purchased products from the defendant for which the defendant has failed to pay plaintiff commissions due it under the terms of the alleged agreement.
The plaintiff, alleging no adequate remedy at law, demands an accounting of the defendant’s sales to Waldbaum’s and any other customers allegedly solicited by the plaintiff subsequent to June, 1977 in furtherance of said alleged oral agreement, and for a judgment for commissions ostensibly due on these sales.
This alleged agreement is of indefinite duration and, by its terms, imposes upon the defendant an obligation to pay plaintiff commissions so long as the defendant and Waldbaum’s or any other customer solicited by the plaintiff continue to do business with one another.
It is true that if Waldbaum’s and/or any other customer allegedly solicited by the plaintiff should place no orders with the defendant within the year, no commissions would be earned, but the defendant’s contract would not thereby have been "performed,” for the defendant’s obligation to pay such commissions would then apply to any orders that might be accepted in succeeding years.
Here the endurance of the defendant’s liability is the deciding factor. The mere cessation of orders from Waldbaum’s and/or any other customer solicited by the plaintiff would not alter the contractual relationship between the parties; it would not constitute performance; plaintiff would still be in possession of his contractual right, though it may have no monetary value, immediately or ever. (See Cohen v Bartgis *897 Bros. Co., 264 App Div 260, 261, affd 289 NY 846; Martocci v Greater N. Y. Brewery, 301 NY 57.)
And, unlike contracts which require the performance of a single act which may or may not be executed within a year, the alleged oral agreement in the instant action requiring the defendant, for an unlimited period of time, to pay the plaintiff commissions on "all” sales of the defendant’s product either billed directly to the plaintiff or, sold by the defendant to "any and all” customers solicited by the plaintiff, is impossible of performance within a year and thereby comes within the Statute. (See Cohen v Bartgis Bros. Co., supra, p 261.)
The plaintiff suggests that the defendant corporation was free at any time to refrain from making sales within the New York area to customers which it procured and as such, the alleged contract or agreement would have been fully performed within a period of one year (or less). It would then follow that the contract would be impossible of further performance and thus would terminate.
However, it has been held that " 'termination is not performance, but rather the destruction of the contract * * * where there is no provision authorizing either of the parties to terminate as a matter of right.’ (Blake v. Voigt, 134 N. Y. 69.) * * * We must distinguish between 'performance’ which fulfils the contract and circumstances which defeat its purpose.” (Cohen v Bartgis Bros. Co., supra, pp 261-262.)
In addition, the United States District Court, Eastern District, New York, in deciding the case of Urvant v Imco Poultry (325 F Supp 677, 686) is quoted as saying: "It is not an answer to say that the commission promise is not within the Statute because the defendant could end its obligation unilaterally at any time by repeatedly and insistently refusing to do further business with the customers produced. The whole policy of the Statute of Frauds is to require a writing to establish the existence of a contract the effect of which extends beyond a year, and the very statement that rejection of orders will end the obligation to pay commissions discloses that the contract liability endures to compelí the discontinuance of sales, an alternative as economically real as the commission-payment alternative. The upshot is that the liability endures and continues to exact the alternative performances of payment of commissions or surrender of commercially acceptable orders”.
Zupan v Blumberg (2 NY2d 547) emphasizes the significance of circumstances whereby the accrual of commission liability *898 is determined by the act of a third party not under the control of either party to the commission contract.
In Zupan (supra, p 549), the claim was that the plaintiff solicitor was to receive a specific percentage of the fees paid to the defendant advertising agency by an advertiser introduced by plaintiff "for so long as the account was active.” The promise was held to be unenforceable under the statute.
There the court noted that the promise sued upon was not performable within a year for, while defendant could dispense with plaintiff’s services as a solicitor of accounts at any time, that would not discharge the duty to continue paying commissions on accounts previously solicited and still active.
Thus, it observed (n, p 552) that "a salesman’s right to commissions cannot be defeated by the arbitrary refusal of his employer to accept orders”.
The court in Zupan, in discussing Nat Nal Serv. Stas. v Wolf (304 NY 332, 340) cited language of that court which emphasized that in Nat Nal neither party could under their arrangement "furnish consideration through performance which will bind the other party for a period beyond the offering and acceptance of a particular order.”
In contrast, in Zupan, as in the case at bar, the furnishing of the single consideration, introducing the customer, was the generating source of a continuing duty to pay a commission on each new order accepted without any limit in point of time. (To the same effect see Urvant v Imco Poultry, 325 F Supp 677, supra; Nurnberg v Dwork, 12 AD2d 612, affd 12 NY2d 776; Hausen v Academy Print. & Specialty Co., 34 AD2d 792.)
The plaintiff’s reliance upon North Shore Bottling v Schmidt & Sons (22 NY2d 171) is, in this court’s opinion, misplaced.
In North Shore, the plaintiff bottling company entered into an oral agreement with defendant Schmidt & Sons, a manufacturer of beer in Pennsylvania, "whereby” the complaint recites, "plaintiff became the exclusive wholesale distributor in Queens County of Schmidt beer * * * for as long as Schmidt sold beer in the New York metropolitan area in which Queens County is located.” (22 NY2d at p 174.)
The New York Court of Appeals, in affirming the determination of the Appellate Division which held the agreement to be outside the Statute of Frauds, viewed with approval the language of that court which held in part that "the contin *899 gency, i.e., defendant Schmidt’s discontinuance of its sales in the New York metropolitan area, was expressly stated to terminate the distributorship. It was within the control of and dependent upon the will of said defendant and performable within a year of its making. Hence, it is outside the Statute of Frauds.” (North Shore Bottling Co. v Schmidt & Sons, 28 AD2d 569, 570.)
The Court of Appeals went on to observe that "Although the parties may have expected the agreement to last over a long period, they contemplated its possible termination by action — unquestionably within the defendant’s power to take at any time — discontinuing its beer sales in the New York area. That being so, the agreement did not, by its terms, 'of necessity extend beyond one year from the time of its making.’ ” (22 NY2d at pp 176-177, citing Nat Nal Serv. Stas. v Wolf, 304 NY 332, 336, supra.)
However, with regard to the issue now before this court, it is crucial to note that the court in North Shore acknowledged significant differences between the facts attendant in that case and those found in Zupan, Martocci and Cohen. It stated: "Quite different from the present are the cases upon which the defendant relies. Although the agreements there involved have been labelled 'service’ contracts of 'indefinite duration’, they might more accurately be termed agreements for commissions in procuring customers or orders. Performance under agreements such as these is dependent, 'not upon the will of the parties to the contract, but upon that of a third party.’ [citing Zupan v Blumberg, 2 NY2d 547, supra; Martocci v Greater N. Y. Brewery, 301 NY 57, supra; and Cohen v Bartgis Bros. Co., 264 App Div 260, supra.] These cases differ from the present case and its predecessors in two important ways. First, the plaintiff [in each of the above-cited cases] was seeking commissions in perpetuity on orders from a customer or customers whom he had obtained for the defendant, the plaintiff’s part of the agreement having been completely performed when the customer was procured; thus, no continuing performance on the part of the plaintiff — with its lessened opportunity for fraud — was involved. Second, the agreement did not contemplate the possibility of termination by either contracting party.” (22 NY2d at pp 177-178.)
It would appear to this court that North Shore, rather than supporting the contentions of the plaintiff in the instant *900 action, provides additional authority for the granting of the relief sought by the defendant corporation herein.
Therefore, in view of the foregoing, it is the judgment of this court that the defendant corporation’s motion for an order dismissing the cause of action pursuant to CPLR 3211 (subd [a], par 5) is granted.