■ GERALD W. BENNETT et al., Respondents, v ATOMIC PRODUCTS CORPORATION et al., Appellants. [903 NYS2d 154]—

In an action, inter alia, to recover damages for breach of contract, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Baisley, Jr., J.), dated June 10, 2009, as denied their motion for summary judgment dismissing the complaint, and granted that branch of the plaintiffs' cross motion which was to dismiss the fourth affirmative defense of the statute of frauds.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiffs developed certain medical equipment for the defendant Atomic Products Corporation (hereinafter Atomic) and its successor in interest, Biodex Medical Systems, Inc. (hereinafter Biodex), pursuant to (1) an oral agreement entered into in 1979 between the plaintiff Alan M. Wunderlich and Atomic, (2) a memorandum signed by Atomic's president, James M. Reiss, on April 19, 1979, acknowledging the receipt of certain prototypes and that those items were given to Atomic for "a % of gross sales as noted," and (3) an oral agreement entered into in 1985 between the plaintiff Gerald W. Bennett and Atomic, relating to a device referred to as a lineator.

On July 22, 1988, the plaintiffs entered into a written agreement with Atomic, whereby the plaintiffs would develop a thyroid scanning system. If Atomic decided to manufacture the

thyroid scanning system, it would pay the plaintiffs royalties based upon a percent of the selling price of each unit. The agreement could be terminated in two ways. Pursuant to paragraph 6, within 120 days after receipt of "drawings in sufficient detail such that ATOMIC can arrange for the commercial production of the System," Atomic could notify the plaintiffs of its decision to reject the prototype—whereupon all rights thereto would revert to the plaintiffs. Pursuant to paragraph 16, the agreement to pay royalties would terminate when no unit was sold for 12 consecutive months, "by reason of there being no Sale of the System," whereupon rights to the thyroid scanning system would revert to the plaintiffs.

This action was commenced in 1996, alleging that the defendants breached their contractual obligations by failing to pay any royalties for the thyroid scanning system and by ceasing the payment of royalties on other medical equipment in 1992 and 1993. After issue was joined and depositions conducted, the defendants moved for summary judgment dismissing the complaint, alleging that the written agreement with respect to the thyroid scanning system terminated by its terms when no thyroid scanning system was ready for commercial sale within one year of July 22, 1988, and the other agreements were terminable at will. The plaintiffs cross-moved for summary judgment dismissing, inter alia, the affirmative defense of the statute of frauds. In the order appealed from, the Supreme Court denied the defendants' motion and granted that branch of the plaintiffs' cross motion which was to dismiss the affirmative defense of the statute of frauds, on the ground that the parties' oral agreements could have been terminated by the defendants within one year, if the defendants had permanently discontinued selling the products. The defendants appeal. We affirm.

An agreement which "[b]y its terms is not to be performed within one year from the making thereof" falls within the statute of frauds and is not enforceable unless there is a written memorandum thereof signed by the party to be charged (General Obligations Law § 5-701 [a] [1]). The oral agreements in this case do not fall within the statute of frauds on the ground that they are terminable at will by the defendants ceasing their sale of the products in issue (*see North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 174 [1968]; *Davis & Davis v S & T World Prods.*, 217 AD2d 645 [1995]).

*Shirley Polykoff Adv. v Houbigant, Inc.* (43 NY2d 921 [1978]), relied upon by the defendants, is distinguishable from the facts of the instant case, since the agreement in that case required annual payments in each year that the defendant used the prod-

uct in issue, and "[a]greements for annual payments are deemed to require at least one year to complete" (*Pickering v American Express Travel Related Servs.*, 1999 WL 1225246, *3, 1999 US Dist LEXIS 19676, *7 [SD NY 1999], citing *Kubin v Miller*, 801 F Supp 1101, 1120 [1992]). Further, the plaintiffs' royalty contracts are distinguishable from an agreement to pay commissions to a salesperson on sales to a customer procured by the salesperson. Such agreements generally are enforceable while the sales person is still employed by the defendant, since employment is generally terminable at will (*see Strauss v Fleet Mtge. Corp.*, 282 AD2d 736 [2001]); however, an agreement to continue to pay such commissions after the termination of the salesperson's employment falls within the statute of frauds, on the ground that performance and the duration of the obligation to perform is dependent, not on the will of the parties to the contract, but rather, on the will of the third-party customer (*see Zupan v Blumberg*, 2 NY2d 547, 550 [1957]; *Gersten-Hillman Agency, Inc. v Heyman*, 68 AD3d 1284 [2009]; *AAA Viza, Inc. v Business Payment Sys., LLC*, 38 AD3d 802, 803 [2007]; *Warner & Whitney v Union Camp Corp.*, 166 AD2d 776, 777-778 [1990]; *H & H Poultry Corp. of N.Y. v MBPXL Corp.*, 95 Misc 2d 895, 896 [1978]; *Levine v Zadro Prods.*, 2003 WL 21344550, 2003 US Dist LEXIS 9637 [SD NY 2003]). The duration of the agreements in issue in the instant case, on the other hand, were dependent not on the will of a third party, but on whether the defendants continued marketing the products.

The defendants failed to establish as a matter of law that the written contract dated July 22, 1988, terminated by its terms within one year thereof, or terminated by virtue of the plaintiffs' alleged substantial breach of its provisions. The defendants never exercised their option to terminate that agreement within 120 days after delivery of the drawings. The evidence in the record indicates that the plaintiffs, with the defendants' approval and acquiescence, continued working on the prototype and the drawings until after the thyroid scanner was ready for commercial production in June 1990, and well within one year of the sale of the first thyroid scanner. The evidence further indicates that the parties, by their conduct, waived time limitations set forth in the agreement (*see Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184 [1982]).

The defendants' remaining contentions are without merit. Mastro, J.P., Santucci, Belen and Chambers, JJ., concur.